THE STATE ex rel. ARTHUR E. WANDER and ST. LOUIS POLICE RELIEF ASSOCIATION v. KARL KIMMEL, Judge, and THOMAS J. HAUK, Clerk, of First District Police Court of City of St. Louis.

In Banc, April 2, 1914.

1. JURISDICTION: Mandamus: Insignificant Amount Immediately Involved: Constitutionality of Statutes. Where the amount actually involved is only fifty cents, but if certain statutes are held constitutional the result will be a depletion of the treasury of St. Louis in a sum estimated at fifty thousand dollars annually, the Supreme Court will take jurisdiction of a mandamus suit which has as its immediate purpose to compel a police court to allow a policeman witness fees for attending the trial of a person charged with violating ordinances regulating street traffic.

2. PENSIONS: Constitutional Prohibition. The public policy of this State as expressed by its Constitution is opposed to pensions except for firemen. The Constitution of 1875 as it now stands is an insurmountable stumbling block in the way of a

statute granting pensions to any other persons; and the only way to legally provide pensions for such persons as school teachers, judges, policemen and public service employees engaged in hazardous employments, is to change the Constitution.

3. ———: ———: **By Indirect Action.** And what cannot be done directly cannot be done indirectly or obliquely. If the effect of a statute authorizing the allowance of witness fees to policemen and requiring such fees to be paid to the Police Relief Association is to grant a pension to the policemen who are members of such association, the statute, although it pursues that indirect and circuitous course, is invalid.

4. ———: **Definition.** A pension is a stated allowance out of the public treasury granted by government to an individual, or to his representatives, for his valuable services to the country, or in compensation for loss or damage sustained by him in the public service. Or, more pithily, it is an annuity from the government for services rendered in the past.

5. **POLICEMAN:** . **Both State and City Officer.** In unmistakable terms the statute (Sec. 9825, R. S. 1909) makes a policeman of the city of St. Louis both a state officer and a city officer. The police force constitutes a department of the city government, and for some purposes policemen are officers of the city, and for others officers of its overlord, the State.

6. ———: **City Officers: Witnesses in Cases for Violating Ordinances.** Policemen of St. Louis, being city officers, fall within the purview of those charter provisions and ordinances dealing with them in a city capacity, to-wit, ordinances and charter provisions relating to them as witnesses in cases involving ordinance violations, which are quasi-criminal or smack of a criminal character, but treated as civil cases, and so spoken of in the law as the best classification it has been able to make of them.

7. ———: ———: ———: **Not Allowed Fees.** Witness fees before a police court in cases relating to violations of municipal ordinances are matter of municipal concern alone in St. Louis, and policemen are not by the ordinances entitled to be allowed fees for attending as witnesses in such cases. The city charter provides that the mayor and municipal assembly have power to "establish compensation of witnesses," and the ordinance declares that "all witnesses and jurors (city officers and prosecutors excepted), duly summoned in any suit before a police judge, and attending at the trial, shall be entitled to fifty cents for each day's attendance;" and, since policemen are "city officers," they come within the exception, and are therefore not entitled to witness fees in such cases. Provisions for

costs in any case are to be found in the written law, if at all.
The common law did not allow witness fees or other costs.
The word "establish" used in the charter is a sufficient warrant
for the ordinance creating and regulating witness fees, and
hence the ordinance governs.

8. PENSIONS: For Policemen: Members of Police Relief As-
sociation:   Witness Fees:   Unconstitutional Statute.   The
statute authorized the police force to form a relief association
under the general incorporation laws of this State, and to
create a fund for the purpose of affording relief to sucn mem-
bers as may become sick or disabled while in the discharge of
their duties, or who may become incapacitated by long years
of service, and for aiding the families of police officers who may
die while in service, and provided that to create such fund,
among other things, members of said relief association should
be allowed witness fees in all municipal or city police courts,
whenever attending therein in matters pertaining to the dis-
charge of their duties as witnesses, said fees to be collected
solely by said association and for its exclusive benefit. The con-
stitution and charter of the association did not contemplate that
all policemen should become members of the association, but
permit it to choose its members from members of the force, and
all policemen are not members, but members may be expelled
for failure to pay dues or to turn over witness fees collected,
and medical examination and initiation fees are required. The
prime objects of the association (the benefits) are preclusive
to its members, and are essentially private and individual to
them; a form of insurance, sick benefits, funeral benefits, re-
tirement or veteran benefits for members, and funeral benefits
for   their   wives,   are   all   provided   for;   witness   fees
may be allowed to members for attending as witnesses in cases
in the police court involving violation of ordinances, to be
collected exclusively by the association, but nonmembers are
allowed no fees in such cases; and those fees are not to be
claimed or taxed or paid for the benefit of the witness, but for
the benefit of the association itself, nor do any of the benefits
available to a member depend on his ever having been a witness
or any fee having been allowed because he attended as a wit-
ness in some such case and testified; and when a witness script
is cashed at the city treasury it goes directly to the associa-
tion.   Held, first, that the association in a roundabout way
establishes a pension system, and, as to the witness fees,
creates a pension fund out of public money collected by taxes
and imposts of one sort or another; second, the statute is a
special law, in that it grants to a corporation a special or ex-
clusive privilege, to-wit, the privilege of feeding at the public
crib, and in that it grants to members of the association favors

State ex rel. v. Kimmel.

denied to nonmembers and thereby discriminates between individuals of a natural class, namely, policemen; *third*, the statute is violative of section 46 of article 4 of the Constitution which denies to the General Assembly, except in case of public calamity, the power to make any grant or to authorize the making of any grant of public money or thing of value to any individual, association of individuals, municipal or other corporation.

9. ———: **Class Legislation: Natural Class: Policemen: Division.** Policemen are a natural class, and the Legislature is prohibited by the Constitution from dividing a natural class of individuals into two classes, and conferring certain privileges on one and denying them to others, namely, granting to members of a certain police relief association sick, retirement and death benefits, and denying them to all other members.

10. **MANDAMUS. Who May Maintain.** The advice of the city counsellor of St. Louis that the statutes under which a policeman claims witness fees are unconstitutional is a sufficient justification for the officials of the police court to refuse to allow and tax the fee, and to permit them to make a test case. .

Mandamus.

WRIT DENIED.

*Johnson, Rutledge & Lashly, Thomas G. Rutledge* and *J. M. Lashly* for relators.

(1)   Sec. 3459, R. S. 1909, makes definite provision for the allowance of the witness fee to the relator herein, Officer Wander, for the exclusive use and benefit of relator St. Louis Police Relief Association. It does not fix the amount of the fee, but provides for the payment of the fees otherwise fixed by law. This section does not exclude any class of police officers from receiving witness fees. It assumes, under the statute law of this State, that all police officers, as well as other witnesses, will get witness fees and provides that such officers as are members of any police relief association shall turn over their fees to the association as a consideration for their membership, and in partial compensation for the benefits derived by them and

their families from membership in such association. State ex rel. v. Gifford, 70 Mo. App. 522. (2) Sec. 5388, R. S. 1909, does not refer to police courts (either before or after amendment) and their exclusion from the enumeration shows the legislative intent that policemen should be entitled to witness fees in police court cases. The section refers to criminal cases, but does not mention civil suits. Since action in police courts are civil suits, it is plain that they were not included, or meant to be. Sec. 1863, Ordinances of St. Louis, 1912; Cannon v. Daniel, 188 Mo. 207; Hannibal v. Dudley, 158 Mo. App. 261; Gallatin v. Tarwater, 143 Mo. 40; Delaney v. Police Court, 167 Mo. 667; St. Louis v. Weitzel, 130 Mo. 612. The amendment of 1913 to this section shows the general intent of the Legislature that these police officers should receive witness fees. (3) A proper construction of ordinance 1897, Code 1912, authorizes the payment of witness fees to all police officers. The only persons excluded by the ordinance from receiving witness fees in police courts are "city officers and prosecutors," and under the statute and charter, it should be construed as not referring to the metropolitan police, who do not come under either of these classifications. State ex rel. v. Walker, 132 Mo. 211; State ex rel. v. Gifford, 70 Mo. App. 522. The power given by the charter to "establish" witness fees in police courts does not include the power to exclude police officers from receiving fees. St. Louis v. Quarry Co., 148 S. W. 948; Peters v. St. Louis, 226 Mo. 62. (4) In so far as policemen are state officers, the city of St. Louis would have no power to pass ordinances limiting their State-given rights or powers, nor to discriminate against them, nor to pass an ordinance in conflict with the State statutes on the same subject. Whether they shall receive any other compensation in addition to their salary is left to the board of police commissioners.

Badgley v. St. Louis, 149 Mo. 122; State ex rel. v. Stobie, 194 Mo. 14; State ex rel. v. Police Comrs., 184 Mo. 109; St. Louis v. Meyer, 185 Mo. 583; State ex rel. v. Mason, 153 Mo. 23; State ex rel. v. Telephone Co., 189 Mo. 83; Constitution, sec. 23, art. 9; R. S. 1909, secs. 9802, 9810. (5) Section 3459, R. S. 1909, creates no new right in favor of any one, nor does it exclude any one from the enjoyment of any right previously possessed. As the law existed in 1881, at the passage of this act, policemen and all other persons received witness fees. There was no law denying them fees. The Legislature had a right to assume that all police officers received fees. While expressly providing for the allowance of witness fees to members of police relief associations, it directs that they be used for the maintenance of such associations, and is a part of the enabling act providing for the organization of police relief associations, and particularly providing for one method of maintenance of these associations by the payment to them by its members of all witness fees earned by them. (a). The law is not special or exclusive. (b) It is not a grant of public money to any individual or association. (c) It does not seek to authorize a political subdivision of the State to grant public money to any one. (d) It does not seek to deny to any person within the jurisdiction of the United States equal protection of the laws. State ex rel. v. Herman, 75 Mo. 354; Lynch v. Murphy, 119 Mo. 163; White v. Railroad, 230 Mo. 287; State v. Rawlings, 232 Mo. 544; Allen v. Board, 81 N. J. L. 135; Budd v. Hancock, 66 N. J. L. 133; Trustees v. Boone, 29 Hun, 391, 93 N. Y. 313; Bullock v. Bilheimer, 175 Ind. 428. (6) Under the doctrine of *stare decisis* this question is settled in favor of relators. State ex rel. v. Gifford, 70 Mo. App. 522. (7) The validity and constitutionality of a statute is to be presumed. There is likewise a presumption against unconstitutionality

and all doubts are to be resolved in favor of the validity of the act. Humes v. Railroad, 82 Mo. 221; State ex inf. v. Life Ins. Co., 150 Mo. 135; Phillips v. Railroad, 86 Mo. 543.

*William E. Baird* and *Robert Burkham* for respondents.

(1)  Sec. 3459, R. S. 1909, creates an arbitrary and, therefore, an unconstitutional discrimination between police officers who are members of relief associations and those who are not.  (a)  A discrimination actually exists: Secs. 3459, 5388, R. S. 1909.  (b)  The discrimination is arbitrary and therefore unconstitutional: Missouri Constitution, art. 4, sec. 53, clause 26; State ex rel. v. Tolle, 71 Mo. 645; State ex rel. v. Miller, 100 Mo. 439; State v. Loomis, 115 Mo. 307; State v. Julow, 129 Mo. 163; State ex rel. v. Railroad, 246 Mo. 512; State v. Baskowitz, 250 Mo. 82.  (2) Sec. 3459, R. S. 1909, creates an arbitrary and, therefore, an unconstitutional discrimination between police officers of the city of St. Louis, the discrimination consisting in this: That under the statute, police officers who are members of the St. Louis Police Relief Association are entitled to witness fees in police courts, whereas, under a valid ordinance covering all city officers, police officers who do not belong to this association are prohibited from receiving witness fees in the same courts. 1st.  The ordinance referred to (Sec. 1897, Revised Code, St. Louis, 1912), excludes police from the fee privilege.  This is seen from the following:  (a)  The history of the ordinance.  (b) The ordinance taken in connection with Sec. 9825, R. S. 1909.  Carrington v. St. Louis, 89 Mo. 208; State ex rel. v. St. Louis, 174 Mo. 125.  (c)  The ordinance taken in connection with its long continued interpretation.  State ex rel. v. William Jewell College, 234 Mo. 299; Timmonds v. Kennish, 244 Mo. 318; Construc-

tion Co. v. Ice Rink Co., 242 Mo. 241. (d) The ordinance in connection with its purpose. 2nd. The ordinance as interpreted above is valid for (a) St. Louis has always possessed plenary control over witness fees in its own courts. Art. 3, sec. 26, clause 8, Charter; Charter of 1835, sec. 32; Charter of 1839, art. 3, sec. 1, clause 34; Revised Ordinances of St. Louis, 1843, p. 324. (b) A witness fee is not a right but only a privilege granted. Healy v. Hillsborough County, 70 N. H. 588; Floyd County v. Black, 65 Ga. 384; Shawnee County v. Ballinger, 20 Kan. 590; Lewis v. Wake County, 74 N. C. 194; 40 Cyc. 2181. (c) A witness fee is not part of a police officer's compensation. (d) The ordinance is in accord with the policy of the State: Sec. 5388, R. S. 1909. (e) The Legislature intended that St. Louis should control its own courts. Authorities cited under "a," above; Secs. 3459, 5388, R. S. 1909. (3) So much of section 3459 as provides for the payment of witness fees to the police relief fund is in reality a grant of public money to a private association, and in reality requires municipalities to grant public money to a private association. As such it is unconstitutional. Constitution, art. 4, secs. 46 and 47. 1st. History of constitutional provisions, court decisions and legislation showing the policy of Missouri on the subject of pensions or grants to public officers. State ex rel. v. Ziegenhein, 144 Mo. 283. 2nd. The St. Louis Police Relief Association is a private corporation. 3rd. The St. Louis Police Relief Association exists for a private purpose. Constitution of St. Louis Police Relief Association, art. 4. 4th. The Legislature may not constitutionally authorize St. Louis to pay over public money to the St. Louis Police Relief Association. State ex rel. v. St. Louis, 216 Mo. 47. 5th. The Legislature, in the statutes here considered, has attempted by indirection to make a grant of public money to a private associa-

tion. R. S. 1909, secs. 3459, 5388. 6th. The single
case cited by relators, Trustee of Exempt Firemen's
Fund v. Boone, 29 Hun (N. Y.), 391, is valueless for
three reasons, viz.: (a) The provisions of the New
York Constitution respecting grants of public funds are
less strict than those of the Missouri Constitution. 1
Dillon, Mun. Corps. (5 Ed.), sec. 430; People ex rel.
v. French, 46 Hun, 232; People ex rel. v. Andrews,
89 Hun, 452; People v. Cooperage Co., 187 N. Y. 142;
State ex rel. v. St. Louis, 216 Mo. 47. (b) This deci-
sion is generally criticized. Aetna Ins. Co. v. Jones,
78 S. C. 445; Association v. Wood, 39 Pa. St. 73. (c)
The doctrine of this case is repudiated in Missouri.
State ex rel. v. Ziegenhein, 144 Mo. 283.

LAMM, C. J.—This is an original proceeding in
mandamus. One Lile was fined in the First District
Police Court of St. Louis for violating a city ordinance
regulating street traffic. Relator Wander, a member
of the city's police force and also a member of his cor-
porate co-relator, St. Louis Police Relief Association,
was a witness at Lile's trial. Respondent Kimmel and
Hauk were respectively judge and clerk of said police
court. Wander in due time applied severally to said
judge and clerk to have his witness fee taxed as costs.
Relator, St. Louis Police Relief Association, through
its secretary, similarly applied to have Wander's wit-
ness fee taxed. Said Kimmel and Hauk, acting under
the advice of the city's legal department, refused to
tax the fee as costs. Thereat relators applied here
for an alternative writ of mandamus to coerce the tax-
ing of that fee "for the use and benefit of said St.
Louis Police Relief Association." Our alternative
writ issued citing respondents to show cause. (Here-
inafter, for convenience, the St. Louis Police Relief
Association will be spoken of as the "association").
To that writ respondents made return. On the coming

in of that return, relators filed a motion in the nature of a demurrer, to-wit, a motion for judgment on the pleadings. This, on the theory that on the face of the return relators are entitled to an absolute writ.

The amount actually at stake is fifty cents. *Contra,* the principle involved is great. The proceeding is practically an agreed case to test the constitutionality of certain statutes, which, if held constitutional, will result (it is claimed in respondents' brief and not denied in relators') in depleting the treasury of the city in an annual vast sum estimated at $50,000 per annum. The precedent sought may be likened to the thin edge of an entering wedge. The gravity of that result as well as that of the questions involved persuaded us to take jurisdiction in the first instance.

As the motion for judgment admits averments of fact sufficiently pleaded in the return and as the denials therein shadow forth the averments of the alternative writ, the scope of the controversy will be outlined when the return is understood. Accordingly we reproduce the return, in part in substance, in part *ipsissimis verbis,* thus:

Respondents aver that relator Wander has no interest in the suit and is not a proper party, that relator association is a corporation formed by the police force of St. Louis under article 12, chapter 33, Revised Statutes 1909, and was duly incorporated in October, 1882, and since that has existed in accordance with laws relating to such associations. They admit that St. Louis is a municipal corporation, that Kimmel and Hauk are respectively the duly appointed and acting judge and clerk of the police court in, question, that Wander is and was a duly appointed and acting police officer of St. Louis, that he is an officer of the State and a member of the association. They aver he also is and was an officer of the city by virtue of section 9825, Revised Statutes 1909. They deny that by the rules of the police board all police officers are required

to join said association. They state the fact to be that as to a policeman the following rule of said board exists, to-wit:

"Sec. 88. He shall at once, upon his appointment and before being assigned to any police duty, make application for membership in the Police Relief Association; and, if admitted as a member thereof, shall promptly pay all his dues and assessments. The Board of Police Commissioners may, for good cause shown, exempt any member from the provisions of this rule."

They aver that said board had no power or authority to adopt such rule or order. They deny that all St. Louis policemen are members of the association. They state that a majority of them are such members, but that some of them are not. Admit that Wander was a witness in said police court in a case pending against one Lile for a penalty for violating an ordinance, that Lile was fined, that relators severally claimed a witness fee on behalf of Wander for the benefit of said association and demanded that it be taxed and a certificate therefor issue, that the secretary of said association, one Cummings, was duly authorized by the association to make the claim and did so. They deny that the laws and ordinances governing St. Louis provided all witnesses duly summoned before a police judge in a suit like that against Lile, were entitled to a fee of fifty cents per day for each day's attendance, but (quoting): "state the fact to be that the charter of the city of St. Louis provides, in article III, section 26, clause 8 thereof, that the Mayor and Municipal Assembly of said city shall have power to 'establish the salaries of all officers and the compensation of all employees, excepting day laborers, and jurors and witnesses respectively, for their services.' That since the 15th day of September, 1864, there has been continuously in force in the city of St. Louis a certain duly enacted ordinance, now known as section

1897 of the Revised Code of 1912 of said city, which said ordinance is in words and figures as follows: .

" 'Sec. 1897. All witnesses and jurors (city officers and prosecutors excepted), duly summoned in any suit before a police justice, and attending at the trial, shall be entitled to fifty cents for each day's attendance; but they shall not charge for attendance in more than one suit on the same day, and every witness or juror shall be deemed duly summoned, who is sworn to serve or testify in any case.' "

They admit they refused to allow or tax the fee and aver they did so on the advice of the city counselor of St. Louis, because they believed the statutes purporting to allow witness fees to those police officers who are members of said association in cases such as Lile's are, in respects hereinafter stated, unconstitutional, null and void.

The balance of the return may speak for itself, thus:

"Respondents state that relator, the St. Louis Police Relief Association, is a voluntary and private corporation, existing solely for private purposes; that its constitution provides (among other things) as follows:

" 'Article VII. *Benefits.* Section 1. *Sick.* Any sick members of this association, who by reason of sickness contracted, or by reason of wounds received, becomes incapacitated from duty while a member of this association, shall receive on and after the fourth day of such sickness or disability, the sum of $1.50 a day, except on such days as he may be, by provision of the police board, carried on the rolls of the police department. Provided, that such sickness or disability be not the result of immoral or intemperate habits or practices. But no sick benefits in excess of the sum of $300 shall be drawn from this association by any member thereof during any space of twelve months.

" 'Section 2. *Veteran.* Any member of this association who shall have served twenty years as a mem-

ber of the police force of the city of St. Louis, shall be retired by the executive committee when requested by him so to do, and not otherwise, and shall receive from the association one thousand dollars. Any member of this association who shall have served fifteen years as a member of the police force of the city of St. Louis, shall be retired by the executive committee when requested by him so to do, and not otherwise, and shall receive from the association the sum of five hundred dollars. Any member of this association who shall have served ten years as a member of the police force of the city of St. Louis, shall be retired by the executive committee, when requested by him so to do, and not otherwise, and shall receive from the association the sum of two hundred and fifty dollars; all such payments, however, being subject to the provisions of section 10 of this article; provided, however, that all such persons requesting retirement under the provisions of this section, shall be members of this association in good standing at the time such request for retirement is made; and provided, also, that no person shall be retired under the provisions of this section, and continue a member of the police force.

" 'Section 3. *Disability.* Any member who has been adjudged, by the medical examiner, permanently incapacitated to perform police duty, from injury received, provided such injury be not the result of immoral habits or practices shall be paid the sum of $1000 and retired from the association. Provided, that no person shall be retired and continue a member of the police force.

" 'Section 4. *Death.* Whenever any member of the police force, who is a member of this association, shall die, the sum of $2000 shall be paid within thirty days after his demise, to such person or persons as he may have designated on the books of the association. If he shall have failed to designate, it will be paid to his heirs-at-law in accordance with the law of Descent

and Distribution. If he shall have failed to designate, and has no heirs-at-law, it shall then revert to the association.

" 'Section 5. Upon the death of the wife of a member of this association, the executive committee shall cause to be paid to said member the sum of one hundred dollars.'

"That a copy of said constitution is annexed to this return, marked 'Exhibit A,' and made a part hereof by reference.

"Respondents state that for a period of years prior to the taking effect of the Laws of 1913 a statute, now known as section 5388, Revised Statutes 1909, had provided, in effect, that no police officer should receive a witness fee for testifying in all criminal cases, coroner's inquests and grand juries. That by the Laws of 1913 (page 230 thereof) there was added to said section a proviso, in words and figures, as follows:

" ' Provided further, That the provisions of this section shall not apply to prevent any officer, who is a member of any police relief association organized under the laws of this State, from receiving witness fees for the benefit of said relief association of which he is a member in all cases in all courts of record, coroner's inquests, justice of the peace courts, whenever attending therein in matters pertaining to the discharge of their duties as witnesses; said witness fees to be collected solely by such officer as may be designated and authorized to collect the same, under the corporate authority of said relief association and for its exclusive benefit.'

"Respondents state that section 3459, Revised Statutes 1909, as amended (Laws 1913, p. 192), in reference to police relief associations organized under the provisions of section 3458, provided in part as follows:

" 'And in addition, members of said relief association shall be allowed witness fees in all cases in all

courts of record; also, in all municipal or city police courts, coroner's inquests, justice of the peace courts, whenever attending therein in matters pertaining to the discharge of their duties as witnesses; said witness fees to be collected solely by such officer as may be designated and authorized to collect the same, under the corporate authority of said relief association, and for its exclusive benefit; and no judge, justice of the peace or presiding officer of said courts or tribunals, shall have power to remit any witness fees legally belonging to any member of said relief association, organized and existing as aforesaid.'

"Respondents state that the sole legal warrant claimed by relators for their demands heretofore made upon respondents is based upon the portions of the statutes above set out.

"Respondents state that the portions of the statutes above set out are unconstitutional and void; that they are violative of the Constitution of the State of Missouri and of the Constitution of the United States; that said portions of said sections above set out violate article 4, section 53, clause 26 of the Constitution of the State of Missouri, in that they are special laws granting to a corporation a special or exclusive right, privilege or immunity; that they violate article 4, section 46, of the Constitution of the State of Missouri, in that by means of this legislation the General Assembly of the State of Missouri has attempted to make a grant of public money to an association of individuals; that they violate article 4, section 47, of the Constitution of the State of Missouri, in that by means of this legislation the General Assembly of the State of Missouri has attempted to authorize a political subdivision of the State to grant public money to an association; and that they violate the Fourteenth Amendment to the Constitution of the United States, in that they deny

to persons within the jurisdiction of the United States the equal protection of the law.

"Respondents further state that under the charter of the city of St. Louis the city counselor is the chief law officer of said city; that it is his duty under said charter to advise all officers of said city in relation to their duties; that respondents are officers of said city, and that they have been advised by the city counselor of said city that the portions of said statutes above set forth are, for the reasons above stated, unconstitutional and void, and that it is the duty of respondents to refuse to comply with the same.

"Wherefore, having made full and true return to the alternative writ heretofore issued herein, respondents pray that judgment may be entered herein denying the peremptory writ of *mandamus*, at the relators' costs."

The following other provisions of law throw light on the main contentions, to-wit, section 3458, Revised Statutes 1909:

"Any police force organized or existing by authority of the laws of this State in any city having a population of over one hundred thousand inhabitants, and in any city of the second class, is hereby authorized and empowered to form a relief association under the general incorporation laws of this State, and to create a fund for the purpose of affording relief to such members of their organization as may become sick or disabled while in the discharge of their duties, or who may become incapacitated by long years of service, and for aiding the families of police officers who may die while in the service of any police department, and for such other similar purpose as may be set forth in their articles of incorporation."

In addition to that portion of section 3459, Revised Statutes 1909, reproduced in the return, the balance of the section provides for creating a fund for the association out of money remaining in the hands of any

incorporated police relief committee, moneys arising from a sale of unclaimed personal property, fines assessed against delinquent officers by police commissioners, all monthly, annual or periodical assessments of members (as per rules of the association), all percentages of rewards allowed to any members of the police force and fifty cents for each bond taken by an officer from any one charged with violating the city ordinances, provided that only one bond fee shall be taken for any one arrest regardless of the number of charges placed against the party arrested. These accumulations are to be paid to the treasurer of the association. Then follows that part of section 3459 reproduced in the return.  (Q. v.)

The Scheme of Separation provides that the "police force shall be maintained at the cost of the city of St. Louis" and the charter of the city and the statutes of the State carry out that scheme.

Section 5388, Revised Statutes 1909, is reproduced in part in the return. That part of it not reproduced prescribes that no officer, appointee or employee holding a state, county, township or municipal office, including police officers and policemen elected or appointed, shall receive any fee or compensation as a witness for testifying before a coroner's inquest, grand jury or in any criminal case. It goes on to provide that such persons shall be compelled to attend the trial of all criminal cases, inquests and grand juries when legally subpoenaed, barring from its provisions officers who reside five miles from the place where the trial or inquest is held or where the grand jury is in session. Then follows that part of section 5388 reproduced in respondent's return—(Q. v.)

Section 9825, Revised Statutes 1909, reads:

"The members of the police force of the cities covered by this article, organized and appointed by the police commissioners of said cities, are hereby declared to be officers of the said cities, under the charter

and ordinances thereof, and also to be officers of the State of Missouri, and shall be so deemed and taken in all courts having jurisdiction of offenses against the laws of this State or the ordinances of said cities.''

Other statutes (R. S. 1909, sec. 9806) established the St. Louis police force at about 1500 men.

The following constitutional provisions are involved:

''The General Assembly shall not pass any local or special law . . . granting to any corporation . . . any special or exclusive right, privilege or immunity.''    [Constitution, art. 4, sec. 53, clause 26.]

''*Public money, grant of prohibited.*—The General Assembly shall have no power to make any grant or to authorize the making of any grant of public money or thing of value to any individual, association of individuals, municipal or other corporation whatsoever: Provided, that this shall not be so construed as to prevent the grant of aid in a case of public calamity.'' [Constitution, art. 4, sec. 46.]

''*Municipalities not to lend credit or grant public money—firemen's fund permitted.*—The General Assembly shall have no power to authorize any county, city, town or township, or other political corporation or subdivision of the State now existing, or that may be hereafter established, to lend its credit, or to grant public money or thing of value in aid of or to any individual, association or corporation whatsoever, or to become a stockholder in such corporation, association or company: Provided, That this shall not be so construed as to prohibit the General Assembly from providing by law for authorizing the creation, maintenance and management of a fund for the pensioning of crippled and disabled firemen, and for the relief of the widows and minor children of deceased firemen, by such cities, villages or incorporated towns as may have an organized fire department—said fund to be taken from the municipal revenue of such cities, vil-

lages or incorporated towns.'' [Constitution, art. 4, sec. 47.]

The return reproduces part of the constitution of the association. By stipulation the charter, constitution and by-laws were filed here to be considered on the motion for judgment. We reproduce from those documents in addition to what the return shows, as follows:

By section 1 of article 4 of its charter it is provided that the term of the corporation (relator association) shall be fifty years. By section 2 of article 1 of its constitution it was provided that membership should terminate whenever the individual shall refuse for three calendar months to pay an assessment, subject to having his suspension for non-payment of dues, etc., removed within six months on a medical examination under another article. By another section of article 1 a physical examination is required, with certain exceptions not material here. By another article an executive committee is appointed in which are vested the rights, powers and responsibilities of the association. This executive committee is elected by members of the association. The officers are selected from this committee and are a president, a vice-president, secretary, treasurer and board of trustees to hold office for one year and removable by two-thirds majority vote of the executive committee. The constitution further provides for the compensation of such officers and the respective duties of each. Among these duties are that of investing the funds of the association in state, city or United States bonds. The books are to be audited once a year by an accountant selected by the executive committee whose appointment is to be approved by the board of police commissioners. By another article an initiatory fee of ten dollars is provided. By another, regular monthly assessments are prescribed and additional death assessments. (At this point in the con-

stitution follows the provisions of the association's constitution on ''benefits'' reproduced in the return.)

By other provisions of its constitution the executive committee designate a medical examiner. By others, the members may retire by resignation and provisions are made for dismissal from the police force, the executive committee must furnish carriages for the funeral of each member, provision is made for the amendment of the constitution and by-laws, elections, proxies, etc. By a provision of the by-laws any member failing to pay over fees (witness fees) collected by him shall be fined or expelled from membership.

On such record we are of opinion our alternative writ should be quashed as improvidently issued and that an absolute writ should be denied. This, because:

I.  *Of the public policy of this State on pensions.*

Whatever may be the public policy of other states under the leading strings of other constitutions, the public policy of this State up to this time is opposed to them except for firemen. We shall not amplify by detail. The evidence of that fact is writ so large in the constitutional provisions hereinbefore set forth, as well as in the trend of the Constitution relating to taxation, and the use of public funds, that he who runs may read. It was announced in unanimous terms and with emphasis on an analysis of our pertinent constitutional provisions by this Court in Banc in a case to which Heaven was a party, to-wit, State ex rel. Heaven v. Ziegenhein, 144 Mo. 283. It was blazed abroad by the electors themselves by the historical fact (of which we take judicial notice) that in 1910 by a vote of almost three to one they voted down an amendment to the Constitution providing for police pensions. True it is that old-age pensions have their advocates; school teachers, theirs; public service employees, engaged in hazardous employments for the benefit of the public, theirs; judicial pensions, theirs; and police pensions,

theirs. But neither the one class nor the other can attain their desires through lawmaker in his statute or through court in its decision so long as the Constitution of 1875 remains as it now stands an insurmountable stumbling block in the way. It goes without saying that we are not speaking of aid to dependent and aged worthy poor, whose sustenance by state aid may be referable to an exercise of the police power called into play perhaps by patriotic gratitude for services rendered. The remedy is in a change in the Constitution and it is vain to seek it elsewhere. Relators rely on the doctrine of cases from New York and possibly other states having more flexible and broader constitutions than our own; but aside from differences in the constitutional provisions dealt with in those cases, their reasoning and conclusions seem somewhat out of line with the Heaven case, supra, and such cases as Aetna Fire Ins. Co. v. Jones, 78 S. C. 445; Phila. Assn. v. Wood, 39 Pa. St. 73.

Moreover, as judicial construction is not a thing that may ride without bits or reins, it is a fundamental proposition to be accepted as a sound rule of exposition that what is forbidden to be done in a straight line, may not be done in a crooked line. What is forbidden to be done directly, may not be done indirectly or obliquely. If, then, the effect of the legislation in question is to create a pension fund out of the common chest and thereby grant pensions out of public funds to policemen (and of that, more presently) the statutes questioned cannot be held a constitutional exercise of legislative power in that regard.

In the eye of the law, a pension is: "A stated allowance out of the public treasury granted by government to an individual, or to his representatives, for his valuable services to the country, or in compensation for loss or damage sustained by him in the public service." [Bl. L. Dict. (2 Ed.), tit. "pension."] Or, put more pithily, it is: "An annuity from the govern-

ment for services rendered in the past." [Aetna F. Ins. Co. v. Jones, 78 S. C. l. c. 456.] Dr. Johnson defines it with exceeding narrow bitterness, thus:—but never mind about his definition. He had a Tory mote in his eye and was not writing true law at the time (the Tories being out of power) or truth at all.

II. *Are policemen of St. Louis "city officers" (and herein of their fees as witnesses prior to the amendments grafted on the statutes in 1913)?*

As leading up to a just conclusion on main questions, to-wit, the constitutionality of said grafts, in part and said statutes in part, it is well to consider the foregoing asking propositions.

(a) It is argued for relators that a St. Louis policeman is a state but not a city officer, and that, with such distinction once fixed, then, by that token, the ordinances of the city (to be presently considered) are not pertinent. Let us look to that. Section 9825, Revised Statutes 1909, supra, prescribes that "members of the police force . . . are hereby declared to be *officers of the said cities* under the charter and ordinances thereof, and also to be officers of the State of Missouri and *shall be so deemed and taken in all courts* having jurisdiction of offenses against . . . the ordinances of said cities."

For a court to construe when there is no call for it, where the language and meaning are plain and unequivocal, is to unjustifiably meddle with a statute. There is no room for construction in that statute. It construes itself. Its meaning is unmistakable, nor need we seek and exploit the *reason* of the law. It is one of those statutes where the will of the people stands for the reason of the law. *Stat pro ratione voluntas populi.* In that view of it, it is idle (on the question up) to stress those cases dealing with the metropolitan police force from the standpoint of a state instrumentality for preserving the public peace and safety, the latter

being one of the sovereign functions of the city's over-lord, the State. There are such cases, but a member of such police force (like other agents) may be called on to act in a dual capacity and in a dual relation; and that is made his precise standing in the quoted stat-ute which makes him both an officer of the city and the State. It says so in so many words and there can be no two ways about it. Those cases, then, dealing with him from the angle of his State capacity and relation militate not at all against his having a city relation and being a city officer also.

Moreover the city pays him for his services, and this case no little illustrates the truth of the authenti-cated and venerable saying: The ox knoweth his mas-ter's crib.

We must hold that a St. Louis policeman is a city officer. It is on that theory, and none other, that no-tice to him of a defect in a street or sidewalk is held no-tice to the city. In Carrington v. St. Louis, 89 Mo. 208, BLACK, J., speaking for the whole court, considered the question of notice to a policeman and his relations to the city, saying, *inter alia,* this (p. 215):

"It is plain from these provisions of the law that the police force constitutes a department of the city government. While these officers are state officers for some purposes, they are also city officers. They are none the less city officers because, for reasons deemed best by the Legislature, they are under the control of the commissioners, and not the assembly. We see that by express law they are made city officers."

The reasoning of State ex rel. Crow, Atty.-Gen., v. St. Louis, 174 Mo. 125, is in line with the Carrington case and in part predicates its judgment thereon.

(b) With the proposition in "a" determined, to-wit, that St. Louis policemen are city officers, it fol-lows that they fall within the purview of those char-ter provisions and ordinances dealing with them in a city capacity, to-wit, ordinances and charter provisions

relating to them as witnesses in cases involving ordinance violations, quasi-criminal or smacking of a criminal character, but treated as civil cases and so spoken of in the law as the best classification it has been able to make of them up to this time.

The present charter of St. Louis provides (as hereinbefore pointed out) that the mayor and municipal assembly have power to "establish . . . . compensation of witnesses. . . ." Agreeably to that power an ordinance of the city is pleaded in the return prescribing that:

"All witnesses and jurors (city officers and prosecutors excepted), duly summoned in any suit before a police justice, and attending at the trial, shall be entitled to fifty cents for each day's attendance; but they shall not charge for attendance in more than one suit on the same day, and every witness or juror shall be deemed duly summoned, who is sworn to serve or testify in any case."

In this connection the significance of the exception in the ordinance springs to view. If we read *policemen* as "city officers," and, hence, as within that exception, we have left no ordinance authority for witness fees to policemen in police courts unless we were to hold that the common law allows witness fees and no ordinance was necessary. Now, the fact is *contra*. At common law no costs were recoverable and none were taxed. Costs, including witness fees, are strictly creatures of statute and the rule in this jurisdiction is the same as elsewhere, to-wit, that provisions of the written law relating to costs must be strictly construed —*i. e.*, by their letter. They cannot be aided by liberal construction or helped by equitable intendments or implications. Strict construction recognizes nothing that is not expressed. [Ex parte Nelson (on motion for costs), 253 Mo. 627, where the cases from our courts are marshaled and the right doctrine announced.]

It must be held, I think, that witness fees before a police court in cases relating to violations of municipal ordinances are matter of municipal concern alone, and that the charter provision authorizing the municipal assembly and mayor to establish the compensation of such witnesses is sufficient charter warrant for the quoted ordinance.

Something is said for relators about the meaning of the word "establish." It is argued, in effect, that by the use of that word the charter is not sufficient warrant for an ordinance creating and regulating witness fees. Let us look into that a little. It is a word in frequent use in the English Bible and ordinary discourse and in the Constitution of the United States. It has there a flexible meaning, as it has in common usage. Even in the latter instrument it shades off from one meaning into another. Black has collected those meanings from the master in constitutional construction, Story, and shows them to be: (a) to settle firmly; (b) to make or form; (c) to found, to create, to regulate; (d) to found, recognize, confirm or admit; (e) to create, to ratify or confirm. Continuing, Black says: "Establish ordinarily means to settle certainly, or fix permanently, what was before doubtful or disputed." To the same effect, only more broadly. is Web. New Inter. Dict., tit., "establish." In view of the premises we are of opinion the ordinance is within the charter power, was a valid exercise of it and that it by its terms *founds, creates* and *regulates* witness fees in ordinance prosecutions before police courts in St. Louis. When, then, that ordinance in terms excluded policemen from its provisions, along with other city officers, it left them precisely where they were at common law, to-wit, without any fees at all and with no ordinance authority to tax them. Respondents' counsel have with industry run down and set forth the history of this

ordinance. They point out that it is an ancient one and has been continuously preserved as a live municipal regulation in the different charters and codes of the city. They point to the fact that it has been the uniform and consistent public policy of this State to allow St. Louis to regulate its own strictly municipal matters, a policy now blazoned forth in our Constitution and nowhere more plainly indicated than in regard to its police courts. They show that the contemporaneous construction put on the ordinance, as it has existed for over half a century, was to the effect that policemen and other city officers were not allowed witness fees in cases of mere municipal concern before police courts; and they show the weightiest reasons for the existence of the exception—for instance: that a policeman's time is mortgaged to the city and is paid for in his salary, that his duty to attend police court when summoned and to testify is but an essential integral part and parcel of his general and bounden duty, his salient and vital function, to-wit, to preserve the public peace and enforce municipal law. All these matters, however, but aid a construction of the ordinance and the charter which, we think, without such aid, stand clear and certain on their very words, and is that heretofore made. That the provisions of the statutes, pleaded in the return and alleged to be unconstitutional, are a questionable departure in legislative intermeddling with the strictly municipal affairs of St. Louis in relation to its police courts and are in contravention of the charter and the ordinance is plain enough. Whether the State Legislature held constitutional authority to legislate the charter and ordinance out of existence in the purely municipal particulars in hand is a question not necessary for us to determine in this case. Let it be reversed, because there are obvious constitutional objections to those statutes and amendments to be considered in our next paragraph.

III. *Of the constitutionality of sections 3459 and 5388, Revised Statutes 1909, as amended in 1913.*

We have already announced the proposition that a prosecution for the violation of a city ordinance is a civil case in its classification. We may add that section 1863 of the Revised Code of St. Louis (Rombauer, 1912) provides that "suits for the recovery of any fine . . . imposed for the violation or breach of any ordinance . . . shall be in the nature of a civil case."

Section 3459, Revised Statutes 1909, was amended in 1913 to provide for only "one bond fee" for any arrest regardless of the number of charges placed against the party arrested. That amendment seems immaterial to any question here. Accordingly, that part of the section alleged to be unconstitutional is found in the existing statute at the time the amendment was made. The section is found in article 12, chapter 33, relating to private corporations (article 12 relating to police and firemen's relief associations). Not only are the statutes pertaining to such associations classified in the statutes as pertinent to and under the head of "private corporations," but the very constitution and charter of relator association show it to be a close and private corporation in the strictest sense for the benefit of its members. Observe, those instruments do not contemplate that all the members of the St. Louis police force should become members of the association by virtue of appointment as policemen by police commissioners. To the contrary, that part of the return alleging that all St. Louis policemen are not members must be taken for the fact and as true on the motion for judgment. It was stated at our bar in oral argument and not denied that certain members of the police force are not permitted by the association to become members. However that fact may be, the constitution of the association permits it to choose its membership, out of a certain class to be sure, to-wit, policemen, but still the

choice is there to be exercised at will. Assuming the
shoe pinches the party complaining, then, it is not what
has been done but what can be done and what was in-
tended to be done under a law that measures its virtue,
force and validity. The association reserves to itself
the power to expel a member for the non-payment of
dues or for the failure to turn over witness fees col-
lected. Admission is regulated by medical examina-
tion and an initiation fee and other requirements are
prerequisites to membership. Moreover, whatever mat-
ters of public concern be involved in the plan of the
association (and such there are) it cannot be gainsaid
but that the prime objects, the benefits, of the associa-
tion are preclusive to the membership and are essen-
tially private and individual to that membership—for
example, a form of insurance, as well as sick benefits,
funeral benefits for wives of members, and retirement
of veteran benefits on the demand of the individual
member are each and all provided in that instrument.
The public interest, if any, is incidental and secondary.
Observe, furthermore, that non-members have no wit-
ness fees, but that those fees may be claimed only by
members of the association or by that officer of the as-
sociation duly authorized to make the claim. More,
and most of all, those witness fees are not to be claimed
or taxed or paid for the benefit of the witness, but for
the benefit of the association itself. His benefits in the
association do not hinge on his ever being a witness
or getting a witness fee. By the very terms of the law
the witness, as such, cannot handle a penny of the fees
for his own sustenance or support, but when the wit-
ness scrip is cashed at the counter of the city treas-
urer the money drain from the public chest leads di-
rectly into the money chest of the association, to be
handled, invested, kept or paid out in accordance with
the rules and regulations of a private corporation, to-
wit, the association, and not otherwise.

We think the foregoing the sensible and just view to take of the matter; and in that view of it there can be no doubt about the unconstitutionality of the statute.

In the first place in a roundabout way (but to all intents and purposes) it established a pension system and to that extent comes within the conclusions reached in the first paragraph of this opinion. It creates in part a pension fund out of public money collected by taxes and imposts of one sort or another.

In the second place, it, by a special law, grants to a corporation a special or exclusive right or privilege, to-wit, (put broadly) the privilege of feeding at the public crib.  [Constitution, art. 4, sec. 53, clause 26.]

In the next place, it is in the teeth of section 46, article 4, of the constitution, which, barring the one instance of "a case of public calamity," denies to the General Assembly the power to make any grant or to authorize the making of any grant of public money or thing of value to any individual, association of individuals, municipal or other corporation whatsoever. To the same effect, exempting firemen, is section 47, article 4, of the Constitution.

It was under section 46, art. 4, that the Board of Control of the St. Louis School and Museum of Fine Arts was denied the right to participate in public funds (State ex rel. v. St. Louis, 216 Mo. 47  (*q. v.*), the elaborate discussion in that case making extended exposition in this on that feature unnecessary.

In determining whether the statutes are special in a constitutional sense, we confront the question of permissible classification under our Constitution.  The classification here is between members of a natural class, to-wit, policemen on the same police force.  They perform the same duty, they earn the same hire, they face the same dangers, they have the same wants  and the same deserts, and the warm cloak of the law's protection and the esteem of the public covers each one of

them faithful to his trust. Keeping that in mind, look at what the law does. They are divided by the statute into two parts, to-wit, members of·the association and non-members of the association. Members are included in the benefit of the law, non-members are set to one side. On the one the law lifts the light of a comfortable countenance, on the other it turns a face of stone. Why so? Suppose the lawmaker had divided the police force by some such line of cleavage as this: Between Presbyterians, Catholics, Methodists, and those policemen with no church affiliation? Or this: Democrats, Republicans, and those policemen who are Prohibitionists or Mugwumps? Or this: Those policemen who are native and to the manner born and those born in Germany, Ireland, England or France? Or this: Those who are comely and those who are homely. Would such classification be constitutional as natural or would it be unconstitutional as unnatural, arbitrary, whimsical, an act of legislative despotism? The rules to go by are not in doubt. They need no reformulation. We can, then, let what we have said in other cases stand for what should be said in this, thus:

In State ex rel. Atty.-Gen. v. Miller, 100 Mo. l. c. 447, et seq., BLACK, J., spoke for the entire court in saying:

"The general observation made in Wheeler v. Philadelphia, 77 Pa. St. 338, 'that a statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things of a class is special, and comes within the constitutional prohibition,' was approved in Ewing v. Hoblitzelle, 85 Mo. 75, and in State v. Tolle, 71 Mo. 650. . . . To make such a law general there must be some distinguishing peculiarity which gives rise to a necessity for the law as to the designated class. A mere classification for the purpose of legislation without regard to such necessity is simply special legislation of the most pernicious character and is condemned by the

Constitution. Mere differences which would serve for a basis of classification for some purposes, amount to nothing in a classification for legislative purposes, unless such differences are of a character as, in the nature of things, to call for and demand separate laws and regulations. . . . Since there is a growing disposition to evade the prohibitions against special laws, we repeat that peculiarities and differences, which will serve to distinguish persons or things as a class for many purposes, do not necessarily furnish any basis whatever for a legislative classification. To justify such legislation the distinguishing features must be such as to call for and demand a separate rule of statute law."

Again, in State v. Loomis, 115 Mo. l. c. 314, this court announced the accepted doctrine to be:

"But classification for legislative purposes must have some reasonable basis upon which to stand. It must be evident that differences which would serve for a classification for some purposes furnish no reason whatever for a classification for legislative purposes. The differences which will support class legislation must, be such as in the nature of things furnish a reasonable basis for separate laws and regulations. Thus the Legislature may fix the age at which persons shall be deemed competent to contract for themselves, but no one will claim that competency to contract can be made to depend upon stature or color of the hair. Such a classification for such a purpose would be arbitrary and a piece of legislative despotism, and therefore not the law of the land."

Again: In State v. Julow, 129 Mo. l. c. 176, a case almost identical on its face except that it dealt with workingmen and not with policemen, it was said:

"But the statute is obnoxious to criticism on other grounds. It does not relate to persons or things as a class; to all workingmen, etc., but only to those who

256 Mo. 41

belong to some 'lawful organization or society,' evidently referring to a trade union, labor union, etc. Where a statute does this, where it does not relate to persons or things as a class, but to particular persons or things of a class, it is a special, as contradistinguished from a general law. [State ex rel. v. Tolle, 71 Mo. 645; State ex rel. v. Herrmann, 75 Mo. 340.]''

Again: In State v. Walsh, 136 Mo. 400, it was ruled that the lawmaker may not take a natural class of persons and (p. 406) ''split that class in two, and then arbitrarily designate the dissevered fractions of the original unit as two classes, and thereupon enact different rules for the government of each.'' The conclusions finally announced in the Walsh case may be somewhat shaken (State v. Thompson, 160 Mo. 333), but the quoted illustration remains just and apposite.

In White v. Railroad, 230 Mo. 1. c. 304, the following apposite observations are made, to-wit:

''It is impossible to make all laws applicable to all persons or corporations; classes in fact exist, and the laws must be made to apply to them as classes. The General Assembly does not really create the class, although we usually speak of it in that way; the class exists by its very nature of inherent conditions, and the lawmaker recognizes the fact and makes the law to suit. If there is reason why a law should be made to apply to a particular class the lawmaking department of the state government has authority to make it unless it is otherwise prohibited by the Constitution.''

And in a late case, State v. Baskowitz, 250 Mo. 1. c. 107, the general proposition (marking down a line to which we strive to approximate) is put in this way:

''The courts have held very uniformly that the State may legislate in regard to a class, but cannot arbitrarily divide that class into two parts, giving to one part a privilege or subjecting it to restrictions which do not apply to the others in the same class.''

In the light of such exposition of the constitutional provisions held in judgment that part of section 3459 copied into respondents' return cannot be held a constitutional exercise of legislative power, and we so rule.

Section 5388 relates to fees in criminal cases and the amendment of 1913 (Laws 1913, p. 230) does not apparently relate to fees in civil cases. In that view of it that section is not drawn, except inferentially, on the maxim *De similibus idem est judicandum,* within the lines of the issues here.

We have come to the conclusion announced on section 3459 not unmindful of those admonitions of the law to the effect that the constitutionality of a statute is not to be lightly drawn in question, and that it rests at the outset in the nursing bosom of friendly presumptions. But, however delicate the task, courts may not put away from them the grave duty of saying one is unconstitutional when it is so beyond a reasonable doubt. [State ex rel. v. Warner, 197 Mo. 650.]

It is argued that the Kansas City Court of Appeals in State ex rel. Kan. City Rel. Assn. v. Gifford, 70 Mo. App. 522, announces doctrines favorable to relators, and we are asked to apply the maxim *stare decisis* by virtue of the judgment of that court in that case, but we cannot very well write the law in that way. Clearly that court could have assumed no jurisdiction of constitutional questions. Nor did it try to. Not only so, but the charter and ordinances of Kansas City are not the same as those in judgment here.

In what way Wander is a party in interest is not clear. Without a bit of title to the fee, he can have no right to the relief. But that is an inconsequential feature we put to one side to let the case ride off on its merits.

The advice of the city counselor that the statutes, under which the witness fee was claimed, were unconstitutional was sufficient justification for the officials

of the First District Police Court to refuse to tax and allow it, and to permit them to make a test case. The instant case falls, in that regard, within the *rationale* of State ex rel. v. Williams, 232 Mo. l. c. 71 et seq.

We have pursued the matter far enough. Let the motion for judgment on the pleadings be overruled. Let our alternative writ of mandamus be quashed and a permanent writ denied. It is so ordered. All concur.