MARY ROSS, Appellant, v. ST. LOUIS DAIRY COMPANY, a Corporation, ET AL.—98 S. W. (2d) 717.

Division Two, November 17, 1936.*

*NOTE: Opinion filed at May Term, 1936, August 20, 1936; motion for rehearing filed; motion overruled at September Term, November 17, 1936.

*Roger D. Moore* and *F. Warner Fischer* for appellant.

*Carter & Jones* and *James E. Garstang* for respondents.

COOLEY, C.—Action for damages for personal injuries sustained by appellant, plaintiff below, while riding in an automobile driven by her husband when the automobile collided with a large milk truck. At the close of all the evidence the trial court gave a peremptory in-

struction directing a verdict for respondents, defendants below, whereupon plaintiff took an involuntary nonsuit, with leave to move to set the same aside. She duly filed such motion, which was overruled, and she appealed.

The suit was brought against the St. Louis Dairy Company, a Missouri corporation, two Delaware corporations and five individuals who composed the last board of directors of said St. Louis Dairy Company, which, after the accident which gave rise to this action and before suit was filed had, by appropriate action, first changed its corporate name to Cabkay Dairy Company and then procured a decree in the St. Louis Circuit Court dissolving the corporation and appointing the members of the last board of directors trustees to wind up its affairs. Before trial plaintiff dismissed as to the two foreign corporations and, upon suggestion of the dissolution of the Missouri corporation, dismissed as to it also. One of the individual defendants died before trial, and the cause proceeded against the four surviving board members, as trustees of the dissolved corporation, viz., John P. Cabanne, Robert L. Kayser, Edwin F. Hagemann and Edwin A. Kayser, who were thus left as the only defendants in the case and who are the respondents herein. The question of their liability depends upon whether or not St. Louis Dairy Company, as it was named at the time of plaintiff's injury, was liable. It is not contended they or any of them are liable personally.

Plaintiff was injured about nine-thirty P. M., September 26, 1926. Suit was filed September 25, 1931. The collision occurred on the "Free Bridge" across the Mississippi River between St. Louis, Missouri, and East St. Louis, Illinois, but on the Illinois side, so that the Illinois Statutes of Limitations govern on that question. Respondents pleaded those statutes and contend that under them and our Section 869, Revised Statutes 1929 (Mo. Stat. Ann., p. 1158), plaintiff's action is barred. They also contend that the driver of the truck was not the employee, servant or agent of St. Louis Dairy Company but of an independent contractor, Bernhardt, Niehaus & Company, wherefore St. Louis Dairy Company was not liable for his alleged negligence. No point is made on this appeal that the truck driver was not guilty of actionable negligence or that plaintiff is precluded from recovery because of contributory negligence, so the evidence relating to those questions need not be detailed. While the trial court did not indicate the ground upon which it gave the peremptory instruction directing a verdict for defendants, the latter assume, and we think rightly, that it was either because in the opinion of the court the action was barred by the applicable Statutes of Limitations or because the evidence conclusively established that the truck involved in the collision was owned and operated by an independent contractor, not the servant or agent of St. Louis Dairy Company, or perhaps for both said reasons.

On the master and servant issue the evidence was as follows:—Plaintiff's husband testified that at the scene of the accident and immediately after the accident he "looked the truck over and saw the lettering on it 'St. Louis Dairy Company'" and that "There was not any name of any other company on there that I saw." He also testified that immediately behind the truck that collided with his car there was another truck with the same name printed on it and no other name. This second truck does not appear to have figured in the accident. Mr. Ross was going east and the truck west. Just ahead of Ross a Mr. Dauer was driving east in an automobile. Dauer testified that as he met and passed the truck the latter was so far over to its left that he, Dauer, had barely room to "skimp through" between the truck and the bridge girders, and that as he thus passed the truck he "got a glimpse of the lettering 'St. Louis Dairy Company' on the truck;" that he saw no other lettering upon it. Such testimony of those two witnesses constituted all of plaintiff's evidence in chief on this subject.

At the close of plaintiff's evidence defendants requested an instruction in the nature of a demurrer to the evidence, which was at that time refused. They then introduced evidence which, on this issue, was as follows:

Edwin F. Hagemann, secretary-treasurer of St. Louis Dairy Company (which for convenience we may hereafter refer to as the Dairy Company) at the time of and long prior to the accident, testified that during all of the year 1926 Bernhardt, Niehaus & Company, of Collinsville, Illinois, did the hauling of milk for the Dairy Company from the latter's plant at Highland, Illinois (known as the pasteurizing and bottling plant), to St. Louis, Missouri, under a written contract, which was introduced in evidence. It may be here stated that the truck herein involved was at the time of the accident carrying a load of milk from the Dairy Company's plant at Highland, Illinois, to St. Louis, Missouri. Hagemann testified that the Dairy Company had no property right or ownership in any of the trucks used by Bernhardt, Niehaus & Company in the hauling of milk and did not employ any of the drivers. He described the trucks thus:

"They are large, enclosed, ice box body trucks—they are refrigerator bodies and the big bodies, for advertising purposes, have in very large letters at least eighteen or twenty inches in height the words 'St. Louis Dairy Company' in two lines and the third line 'Established 1868' on each side of the tractor, which is the mechanical part of the truck that pulls the bodies."

He further testified that under the driver's window (of the tractor part of the truck) and on the other side of the cab was painted in letters about four inches high, the name of the owner, Bernhardt, Niehaus & Company with the street address and the name Collins-

ville, Illinois. Another witness for defendants, Reinacher, driver of the truck, testified similarly as to the lettering on the truck.

Hagemann said that Bernhardt, Niehaus & Company used two such trucks in hauling milk; that he himself never came in contact with the drivers thereof and in susbtance that he did not know of any orders or directions being given them by the Dairy Company or anyone in its employ. He further testified:

"Usually one man was authorized by the officers of the company to receive these shipments of milk from the country and had charge of the supplies. I don't know whether he was charged with telling the drivers of those trucks where they should go and what they should do with the milk when they got in. . . . Some of the hauling trucks delivered directly to the different branches (in St. Louis). I don't know whether these trucks would come in from Illinois to the main plant here in St. Louis and then on occasions be referred again by the platform superintendent to some branch or other place. Our plant over in Illinois from which the trucks came to St. Louis had a man who was in charge of loading the trucks; he was superintendent of the plant over there on or about the 26th of September, 1926.

"Q. And that superintendent had charge of directing the truck where to go; is that so? A. Well, there was only one place to go, as I understand the contract; just a round trip from St. Louis to Highland."

Robert Reinacher testified that at the time of the accident he was the driver of the truck in question and was in the employ of Bernhardt, Niehaus & Company, hauling milk from Highland, Illinois, to St. Louis at Twentieth and Pine. "Once in a great while I would take it to Kingshighway and Page, where there was a branch of the St. Louis Dairy." On cross-examination he admitted that in his deposition previously taken the following questions were asked and answers given:

"Q. And were you driving a truck? A. Yes, sir.

"Q. What kind of truck was that? A. Ten-wheel milk truck.

"Q. For what company? A. St. Louis Dairy, and delivering milk; the truck was owned by Niehaus, of Collinsville, Illinois.

"Q. Who were you working for, the St. Louis Dairy Company? A. No, sir; I was working for Niehaus.

"Q. Were you subject to the orders of the dairy? A. I was taking milk for the dairy under contract.

"Q. And subject to their orders and directions? A. Yes, sir."

He testified at the trial that when he got to the Dairy Company's plant at Twentieth and Pine in St. Louis he did not report the accident. He further testified:

"It sometimes happened when I would come over to St. Louis from the St. Louis Dairy Company plant in Illinois to the St. Louis Dairy Company plant at Twentieth and Pine that I would be told

at Twentieth and Pine to go to Kingshighway and Page. That was done by the person in charge of the loading at Twentieth and Pine. On September 26, 1926, the instructions that I got were on a drayage ticket which we got from the St. Louis Dairy Company at Highland. It said to take the milk to Twentieth and Pine in St. Louis, which I did. I don't recall going to any other place in St. Louis from Twentieth and Pine on that day. Arnold Sackett was the driver of the truck behind me. . . . When we got to Twentieth and Pine we just knowed what we had to do and got the man there to open the door and tell us what to load for the dairy and went out.''

Arnold Sackett testified that in September, 1926, he was employed by Bernhardt, Niehaus & Company and was driving one of the two trucks of that company that hauled milk from Highland to the Dairy Company's plant at St. Louis; that those trucks had on them the names ''Bernhardt, Niehaus & Company, Collinsville, Illinois,'' and ''St. Louis Dairy.''

The contract between the Dairy Company and Bernhardt, Niehaus & Company, omitting signatures of the parties, reads as follows:

''This agreement made by and between Bernhardt, Niehaus & Company of Collinsville, Illinois, engaged in the business of hauling freight by motor trucks, and the St. Louis Dairy Company, a corporation of the State of Missouri, engaged in the business of distributing milk and dairy products in the City of St. Louis, and having a plant at Highland, Illinois,

''Witnesseth:

''The said Bernhardt, Niehaus & Company oblige themselves for the considerations hereinafter named to transport by power vehicle in insulated bodies, constructed suitable for the purpose and approved by the St. Louis Dairy Company from the plant of the St. Louis Dairy Company at Highland, Illinois, to the City of St. Louis, Missouri, 20,000 pounds of milk gross weight daily, and will deliver said milk to said Dairy Company's places of business at 20th and Pine Streets, 1326 N. Kingshighway or elsewhere in the City of St. Louis, as said Dairy Company may direct.

''The terms 'pounds gross' and 'gross weight' used in this agreement shall be understood to mean the weight of whatever the Dairy Company shall give Bernhardt, Niehaus & Company to haul including crates, boxes, containers, contents and occasionally ice.

''Said milk when delivered to said Bernhardt, Niehaus & Company to be covered and in suitable containers for transportation to said dairy company.

''Said Bernhardt, Niehaus & Company is to call for said milk at the Dairy Company's plant at Highland, Illinois, each day between the hours of 6:00 A. M. and 6:00 P. M. The unit Bernhardt, Niehaus & Company will provide and use in this hauling will be a power ve-

hicle provided with insulated body, both of suitable capacity to handle a gross weight of 10 tons in one load.

"This contract to go into effect commencing January 1st, 1926, and thereafter to remain in force for one year up to and inclusive of December 31st, 1926.

"Said Dairy Company agrees that for the transportation of said milk it will pay to said Bernhardt, Niehaus & Company at the rate of 15¢ per hundred pounds gross, and obliges itself to deliver to Bernhardt, Niehaus & Company for transportation 20,000 pounds gross daily. For the return from St. Louis to Highland of the empty containers such as boxes, crates and the like, which return service Bernhardt, Niehaus & Company is obliged to perform, no charge whatever will be made.

"Said Bernhardt, Niehaus & Company oblige themselves to haul each day in one trip from Highland and deliver to said Dairy Company in St. Louis, the entire daily quota of this contract.

"Bernhardt, Niehaus & Company assume the obligation to help in the loading and unloading of this hauling unit with one man, that is the truck driver.

"Said Bernhardt, Niehaus & Company oblige themselves to carry at their expense suitable personal and property damage liability insurance protecting besides themselves also the contingent liability of the St. Louis Dairy Company, also to submit to them the respective insurance policies which in the matter of the Insurance Companies insured in, insurance period and amounts of insurance carried must be approved by the St. Louis Dairy Company.

"Executed in duplicate this 26th day of December, 1925."

In rebuttal Randolph Moore, a brother of one of plaintiff's attorneys, testified that after this suit was filed he called on Mr. Hagemann to serve a subpoena upon him and had this conversation with him:

"Well, I had called, and in that talk with Hagemann I made a statement to the effect that all it was necessary for us to show was agency of the truck, and he at first said that the advertising, the large St. Louis Dairy letters, was nothing but advertising. Then I said, 'They certainly hauled the milk for them, didn't they?' and he said, 'Yes, they did,' and I said, 'Don't that make an agency?' and he said, 'Yes.'"

Defendants objected to the question which elicited the above testimony of Moore unless it was limited to impeachment purposes. There was no ruling by the court. Hagemann had testified that in the conversation with Moore he did not say that Bernhardt, Niehaus & Company was the Dairy Company's agent and had not referred to that company's truck drivers as "agents" of the Dairy Company.

■ We have stated at length and in detail the facts shown by the evidence bearing upon the question of whether or not the rela-

tion of master and servant, or principal and agent, existed between the Dairy Company and Bernhardt, Niehaus & Company or the latter company's employee, Reinacher, because in our opinion it conclusively appears that such relation did not exist. On this proposition appellant's chief contention is thus stated in her brief:

"When plaintiff introduced evidence showing that the name of the St. Louis Dairy Company, and that name alone, appeared on the truck which caused plaintiff's injuries, this raised the presumption that said truck was being operated by said St. Louis Dairy Company through its agents or servants, acting within the scope of their employment."

Appellant contends that the presumption thus raised made a prima facie case for her which could not be taken from the jury, regardless of any evidence that might be introduced by defendants. She further contends that even if it were possible for the defendants to "destroy" such presumption by positive evidence to the contrary, defendants' evidence was not so "positive, unequivocal and unimpeached" as to have that effect, as a matter of law. Of these contentions, in their order.

Plaintiff's evidence showed only this, viz., that the truck had printed upon it the name "St. Louis Dairy Company." Mr. Ross, plaintiff's husband, testified that he saw no other name or lettering thereon. Dauer testified that as he passed the truck he got a glimpse of that name on the truck. Obviously Dauer's testimony, under the circumstances, does not prove that there was no other name thereon, nor does Ross' testimony really so prove, because he only said that there was no other name *that he saw*. Defendants' evidence shows that the name Bernhardt, Niehaus & Company was also printed thereon. But if it be granted that the jurors were not bound to believe defendants' evidence and that plaintiff's evidence is sufficient to establish as a fact that only the name "St. Louis Dairy Company" appeared on the truck, how stands the case?

Appellant cites on this branch of the case fifteen Missouri Supreme and Appellate Court decisions. A number of those cases, those that appear at first glance to be most nearly in point for plaintiff, are discussed and distinguished in State ex rel. Kurz v. Bland et al., 333 Mo. 941, 64 S. W. (2d) 638, which for brevity we shall refer to as the Kurz case. It was a certiorari proceeding brought to quash the opinion of the Kansas City Court of Appeals in Kurz v. Greenlease Motor Car Co., 52 S. W. (2d) 498; reversing a judgment in favor of Kurz against said Motor Car Company for personal injuries caused by the negligence of the driver of an automobile. In that case the ownership of the negligently driven automobile was admitted to be in said Motor Car Company but said company denied that the driver thereof was its agent. There was no *factual* evidence of agency. The plaintiff proved the casualty and the circumstances thereof and

certain declarations made by the driver of the automobile, which this court seemingly considered incompetent and held that in any event they were insufficient to make a submissible case on the question of the driver being the Motor Car Company's agent and acting within the scope of his authority. The court said in the Kurz case, 333 Mo. 1. c. 944, 64 S. W. (2d) 638, 640, that the first legal proposition was upon the relator's contention that "'proof of ownership of an automobile makes a prima facie case of agency of the driver and liability of the owner for the negligence of the driver which entitles plaintiff to have her case submitted to the jury on that issue." The court then discusses and distinguishes a number of cases, several of which are cited in the instant case, pointing out that in some of them the court was dealing with a situation wherein the defendant had offered no evidence to rebut the presumption arising from proof of ownership and in others there was *evidence* of agency so that the plaintiff's case did not rest alone upon the presumption. On the question of the nature and effect of the presumption the court, quoting from Guthrie v. Holmes, 272 Mo. 215, 233, 198 S. W. 854, said, 333 Mo. 1. c. 946:

"Taking relator's case as resting solely upon the fact of the casualty and the ownership of the car driven by Millstein, which co-operated with the taxicab in the infliction of the injuries, what was the presumption, and the nature of it, that arose upon such showing? The leading case of our court en banc dealing with this question is Guthrie v. Holmes, supra. In that case, 1. c. 233, it is said: 'If it be proved . . . that the car was owned by defendant, and if it be further proved . . . that the chauffeur was in the general employment of defendant, then the presumption arises that such chauffeur was within the scope of his employment when the accident occurred. . . . From such a showing the plaintiff has a prima facie case. . . . This presumption cannot stand in the face of positive proof of facts to the contrary; and, where the plaintiff has relied upon such presumption and it has been opposed by positive evidence to the contrary, he must then produce evidence tending to disprove the defendant's positive testimony, or his prima facie case will fall.'

"This pronouncement on the scope and evidential effect of the presumption, a rebuttal one, was explained and illustrated by the subsequent case en banc of Bond v. St. Louis-San Francisco Railway Co., 315 Mo. 987, at pages 1001-2. The scope or effect of presumption as laid down in the Guthrie-Holmes case has never since been authoritatively broadened or extended by our court en banc and it is our court's last controlling decision on that subject."

In Bond v. St. L.-S. F. Ry. Co., supra, 315 Mo. 987, 1001-2, 288 S. W. 777, 782, the court speaks of this presumption, arising from proof

of ownership of the automobile and that it was being driven by the owner's regularly employed chauffeur, as a "mere rule of procedure," and says that it does not, without more, give rise to an *inference of fact* that the operator was at the time acting within the scope of his employment, or, "if such an inference can be drawn, it is one so frail and tenuous as not to amount to substantial evidence."

In Guthrie v. Holmes, supra, 272 Mo. 1. c. 233, 198 S. W. 1. c. 858, the court said:

"Presumptions of this character (like all presumptions as to a fact in a case) take flight upon the appearance in evidence of the real facts. In Berry on Law of Automobiles (2 Ed.), section 615, page 694, the doctrine is well stated:

" 'This presumption cannot stand in the face of positive proof of facts to the contrary, and where the plaintiff has relied upon such presumption and it has been opposed by positive evidence to the contrary, he must then produce evidence tending to disprove the defendant's positive testimony, or his prima facie case will fall. The presumption in question is rather a frail thing. It is unlike an inference that arises upon the proof of certain facts, and which is necessarily true if the facts are true. It rests upon the facts that the automobile was owned by the defendant and that the chauffeur who was operating it was in the general employment of the defendant; neither one or both of which actually tends to prove that the chauffeur was engaged in the owner's business.' "

On the point we are discussing appellant cites, among other cases, Barz v. Fleischmann Yeast Co., 308 Mo. 288, 271 S. W. 361, a decision by the court en banc, strongly relied on by appellant. In the Kurz case it is pointed out that, as was noted in State ex rel. v. Daues, 323 Mo. 388, 403, 19 S. W. (2d) 700, the Barz case "is not controlling as a ruling or announcement of any rule or principle of law by this court, for that said opinion did not have the concurrence of a majority of the judges inasmuch as only three of the judges concurred in the opinion, an equal number dissented thereto and one of the judges concurred only in the result of the decision in the case," so that while there was a decision on the facts there was no authoritative pronouncement of the law of the case by a majority of the court. Further, the Barz case was distinguished on the facts. Relative to the nature and effect of the presumption arising from proof of ownership of the automobile which inflicted the injury, it is said in Murphy v. Tumbrink (Mo. App.), 25 S. W. (2d) 133, 134, citing and following Bond v. St. L.-S. F. Ry. Co., supra:

"Such presumption does not rest on an inference of fact. The fact of ownership from which the presumption arises is not regarded as any evidence of the fact presumed, but the presumption is a mere rule of procedure, and is put to flight by an unequivocal showing

on the part of the owner that the car was not driven by him, nor by his servant acting within the scope of his employment." [See, also, to like effect, Rockwell v. Standard Stamping Co., 210 Mo. App. 168, 241 S. W. 979.]

In the Kurz case it is said that the relator's second contention was that, having made, as she claimed, a prima facie case of ownership of the automobile and of the agency of the driver, together with his actionable negligence and the injury resulting therefrom, such prima facie case could not be destroyed by parole evidence introduced by the defendant. As we have pointed out, the court held that there was no sufficient proof of agency other than the presumption arising from ownership of the automobile, and the effect of the decision, as we understand it, is a denial of the contention that such prima facie case, where it rests alone upon said presumption, cannot be destroyed by positive and unequivocal testimony introduced by the defendant. We are not disposed to disagree with that holding.

In the case before us plaintiff's evidence shows only that the truck had printed upon it the name "St. Louis Dairy Company." It does not show, except by invoking the presumption we have been discussing, that the truck was owned by the Dairy Company or that the driver was in the employment of said company. In order to make applicable the doctrine of *respondeat superior* as between the Dairy Company and the truck driver—speaking still of the presumption— it is necessary first to infer from the fact that the Dairy Company's name was printed on the truck that it was owned by the Dairy Company and from that fact to infer further that it was being driven by the Dairy Company's agent. Both propositions are denied by positive and unequivocal evidence introduced by defendants. Under the rule announced in the cases we have mentioned, and which is elucidated in the Kurz case, if defendants had introduced no evidence the presumption referred to might have carried plaintiff's case to the jury. But when defendants introduced positive and unequivocal evidence to the contrary the presumption disappeared and insofar as plaintiff's case rests upon said presumption it fails.

The next question is, was there factual evidence in the case sufficient to make a case for the jury on the question of agency? We think not. There was none introduced by plaintiff in her case in chief. She proved by Moore, in rebuttal, that Hagemann, the Dairy Company's secretary-treasurer, said, "Yes, they did," in answer to the question "They (Bernhardt, Niehaus & Company) hauled the milk for them (Dairy Company) didn't they?" Of course they did, but under a contract which we shall presently notice more fully. That answer has no tendency to prove agency. Moore testified that thereupon this question was asked and answer given: "Don't that make an agency?" "Yes." Hagemann denied making that state-

ment, but if he made it it was obviously a mere opinion or conclusion which could not amount to proof of the fact of agency.

 Defendants' evidence, in our opinion, does not help plaintiff's case. The contract under which the hauling was done was in writing and speaks for itself. Being a written instrument its construction is a question for the court. There is no evidence in the record that the hauling was done otherwise than according to the terms and provisions of the contract. We think that under that contract Bernhardt, Niehaus & Company was an independent contractor. A succinct definition of independent contractor is given in 14 Ruling Case Law, page 67, section 2, quoted with approval in Flori v. Dolph (Mo.), 192 S. W. 949, 950 (2-3), as follows:

"According to the definition substantially adopted by many courts, with some variations in language, an 'independent contractor' is one, who, exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer except as to the result of his work."

The right of control as to the mode of doing the work is generally held to be the principal consideration in determining the relationship, but "retention of the right to supervise as to results, as distinguished from the right to supervise as to the means by which the intermediate results should be obtained does not affect the relationship." [Baker v. Scott County Milling Co., 323 Mo. 1089, 1101, 20 S. W. (2d) 494, 498 (4-5); 39 C. J., sec. 1518, p. 1316, sec. 1521, p. 1321.]

Appellant stresses the provision of the contract requiring Bernhardt, Niehaus & Company to deliver the milk at the Dairy Company's places of business at Twentieth and Pine streets, 1326 N. Kingshighway "or elsewhere in the City of St. Louis as said Dairy Company may direct" as showing retention by the Dairy Company of the right of "control and direction over the action of Bernhardt, Niehaus & Company." That provision clearly gave the Dairy Company only the right to direct the place of delivery in St. Louis of a truck load of milk. It appears that said company had several "branch plants" in the city and naturally reserved the right to consign shipments of milk from Highland to such of its plants in St. Louis as might suit its purpose. So might any shipper of merchandise direct a carrier as to the destination of the goods shipped without creating the relation of master and servant as between himself and the carrier.

 It is argued also that the fact that the contract required Bernhardt, Niehaus & Company to carry liability insurance to protect besides themselves the "contingent liability" of the Dairy Company indicates that Bernhardt, Niehaus & Company was the Dairy Company's agent, else there could not have been liability on the part of the latter for any act or negligence of the former. No authorities are cited on this proposition. The Dairy Company may

have thought that although not liable, claims might be made against it, and have taken the precaution to require insurance to be carried for protection against such claims. We are not persuaded that such provision alters the relationship otherwise clearly created by the contract.

It is further argued that Reinacher in his deposition had said that he was subject to the orders and directions of the Dairy Company. He did not so testify at the trial. We have quoted what he said on that proposition in his deposition. The portion thereof relied on by appellant is this: After stating that at the time in question he was working for Niehaus "taking milk for the dairy under contract," Reinacher was asked—"And subject to their orders and directions?" to which he replied, "Yes, sir." In addition to being a mere conclusion that testimony is vague and indefinite. Reinacher did get from the Dairy Company directions as to where in St. Louis the milk was to be delivered. On the occasion in question such direction was on the drayage ticket furnished him at Highland. He doubtless had reference in his deposition to "orders and directions" of that character. There is no evidence in the record tending to show that he or any other driver ever received from the Dairy Company or that the latter ever assumed to give to the drivers any other kind of orders or directions. Said deposition testimony was apparently introduced for impeachment purposes. We doubt if it can be considered as having any tendency to impeach Reinacher's testimony at the trial and it certainly does not amount to substantial evidence of agency.

In view of our holding that there is no showing that the relation of master and servant or principal and agent existed between the Dairy Company and Bernhardt, Niehaus & Company or the driver of the truck sufficient to take the case to the jury the judgment of the circuit court will have to be affirmed regardless of whether or not the action was barred by the Illinois two-year Statute of Limitation. Therefore, we shall not further lengthen the opinion by detailing the facts and discussing the reasons urged pro and con as to whether that statute applies in the circumstances of this case. The judgment is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.