Kimberly HODGES, Respondent/Cross–Appellant,

v.

CITY OF ST. LOUIS, Appellant/Cross–Respondent.

No. SC 87513.

Supreme Court of Missouri,
En Banc.

Feb. 27, 2007.

Rehearing Denied April 17, 2007.

Mark E. Lawson, Edward J. Hanlon, Thomas R. McDonnell, St. Louis, for Appellant/Cross-Respondent.

Donald L. Schlapprizzi, St. Louis, for Respondent/Cross-Appellant.

Galen P. Beaufort, William D. Geary, Kansas City, for Amicus Curiae, City of Kansas City, Mo.

RONNIE L. WHITE, Judge.

## I.

The City of St. Louis (City) appeals the judgment of the circuit court awarding damages to Kimberly Hodges after her mother died of injuries from a car accident caused by a City police officer. Hodges filed a cross-appeal challenging the constitutionality of the statutory limitation on damages payable by a public entity. The Court holds that the officer is an agent of the City for purposes of vicarious liability and the limitation on damages is constitutional. The judgment of the circuit court is affirmed.

## II.

Ann Martin was injured in March 2003 after her car was hit in an intersection by a police car driven by Officer Willie Walker traveling without lights or sirens in the wrong direction down a one-way street perpendicular to Martin's route. Martin filed a personal injury suit against Walker, the City, and the Board of Police Commissioners (Board). Martin died in January 2005. Her daughter, Hodges, became the substitute plaintiff and amended the petition to allege wrongful death.

Hodges settled with Walker and the Board.[1] The City asserted the affirmative defense of sovereign immunity and moved for summary judgment. The circuit court overruled the motion, and the parties proceeded to trial. The jury found in favor of Hodges and awarded damages of $1.2 million.[2] The court reduced the judgment to $335,118—the statutory limitation on damages payable by a public entity under section 537.600.1(1).[3]

Hodges objected to the limitation and moved to set aside the judgment.[4] The City moved for judgment not withstanding the verdict (JNOV). The court overruled all motions, and the parties appealed. The City claims that it cannot be vicariously liable for Walker's negligence because police officers are agents of the Board, not the City. Hodges challenges the constitutionality of the limitation on damages.

## III.

This Court has exclusive jurisdiction to determine the validity of a state statute.[5] The standard of review for constitutional challenges to a statute is *de novo.*[6] The standard of review of the trial court's denial of a motion for JNOV and directed verdict is the same; the Court must determine whether the plaintiff made

---

1. Each co-defendant paid the statutory maximum of $335,118, for a total of $670,236.

2. After off-setting this amount by the $670,236 collected from Walker and the board, the City's liability without the cap would have been $549,764.

3. All references are to RSMo 2000.

4. Hodges had proven actual economic damages of $486,816.31.

5. Mo. Const. art. V, sec. 3.

6. *Rizzo v. State,* 189 S.W.3d 576, 578 (Mo. banc 2006).

a submissible case.[7] The Court takes the evidence in the light most favorable to the verdict, giving the prevailing party all reasonable inferences from the verdict and disregarding the unfavorable evidence.[8] Where the issue is a question of law, the Court reviews the trial court's conclusions *de novo*.[9]

## IV.

Section 537.600.1(1) contains an express waiver of sovereign immunity for compensatory damages actions against public entities with respect to: "(1) Injuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles or motorized vehicles within the course of their employment."

 As a general rule, the negligent conduct of a police officer in the operation of a motor vehicle while on duty states a claim for vicarious liability against the city that the officer serves.[10] However, the cities of St. Louis and Kansas City are unique in that their officers are employed by boards of police commissioners, not the cities. The City contends, therefore, that Officer Walker is not an agent of the City for purposes of vicarious liability; only Walker's actual employer, the Board, is responsible for his negligence. Ms. Hodges asserts that Walker is a dual agent of the state and the City as a matter of statutory law and at common law.

*Agency Relationship Created by Statute*

Referring to the cities of St. Louis and Kansas City, section 84.330 states:

The members of the police force of the cities covered by sections 84.010 to 84.340, organized and appointed by the police commissioners of said cities, are hereby declared to be *officers of the said cities*, under the charter and ordinances thereof, *and also to be officers of the state of Missouri*, and shall be so deemed and taken in all courts having jurisdiction of offenses against the laws of this state or the ordinances of said cities. (emphasis added)

This Court confirmed the statute's creation of a dual agency relationship over a century ago in *Carrington v. City of St. Louis*.[11] There, the City was held liable for a dangerous condition created by an officer on City premises. The statute has not changed substantially since that time. Then, the Court stated:

"It is plain, from these provisions of the law, that the police force constitutes a department of the city government. While these officers are state officers for some purposes, they are also city officers. They are none the less city officers because, for reasons deemed best by the legislature, they are under the control of the commissioners, and not the assembly. We see that by express law they are made city officers ... We conclude that as to the act in question [the city police officer] was the *officer and agent of the city* ..."[12] (emphasis added)

The City argues that *Carrington* has been eroded by subsequent holdings and should not be followed. Specifically, in

7. *Maldonado v. Gateway Hotel Holdings, L.L.C.,* 154 S.W.3d 303, 307 (Mo.App.2003).

8. *Nemani v. St. Louis University,* 33 S.W.3d 184, 185 (Mo. banc 2000).

9. *Jungerman v. City of Raytown,* 925 S.W.2d 202, 204 (Mo. banc 1996).

10. *Oberkramer v. City of Ellisville,* 650 S.W.2d 286 (Mo.App.1983).

11. 89 Mo. 208, 1 S.W. 240, 241–242 (1886).

12. *Carrington* at 241–242.

*Carrington*, the Court suggested that "the police force is a department of the city government," but subsequent cases cited by the City clarify that the Board is a state agency.[13] The City fails to articulate how the Board's relation to the state negates Officer Walker's relation to the city he serves. The central holding of *Carrington* remains authoritative and is reinforced by *State ex rel. Wander v. Kimmel*,[14] where this Court clearly recognized that a police officer is an agent of both the state and the city.

> [A] member of such police force (like other *agents*) may be called on to act in a dual capacity and in a dual relation; and that is made his precise standing in the quoted statute which makes him both an officer of the city and the state. It says so in so many words, and there can be no two ways about it. Those cases, then, dealing with him from the angle of his state capacity and relation, militate not at all against his having a city relation and being a city officer also. Moreover, the city pays him for his services, and this case no little illustrates the truth of the authenticated and venerable saying: "The ox knoweth his master's crib." [15] (emphasis added)

In light of Section 84.330 as previously interpreted by this Court in *Carrington* and *Wander*, the Court holds that Officer Walker is an agent of the City as a matter of law.[16] If the legislature wants a different result, it can amend section 84.330. Statutory agency being dispositive, the Court need not consider whether Ms. Hodges presented sufficient evidence to make a submissible case to establish common law agency.[17]

### Limitation on Damages

■ Hodges contends that the statutory cap on damages payable by a public entity for the negligence of a public employee violates the equal protection clause of the Missouri Constitution [18] because it bars full recovery of actual economic damages, whereas a similar cap protecting private defendants allows full recovery.[19]

Section 537.610.2 states:

> The liability of the state and its public entities on claims within the scope of sections 537.600 to 537.650, [sic] shall

---

**13.** *Smith v. State,* 152 S.W.3d 275 (Mo. banc 2005); *State ex rel. Sayad v. Zych,* 642 S.W.2d 907 (Mo. banc 1982); and *State ex rel. Sanders v. Cervantes,* 480 S.W.2d 888 (Mo. banc 1972).

**14.** 256 Mo. 611, 165 S.W. 1067 (1914).

**15.** *Id.* at 1072–1073. Today, as in 1914, the City pays its police officers for their service.

**16.** The dissent challenges the Court's reliance on *Carrington* and *Wander* because neither case involved *respondeat superior* liability. It views *Pearson v. Kansas City,* 331 Mo. 885, 55 S.W.2d 485 (1932), as more directly on point, but *Pearson* also does not involve *respondeat superior* liability. The *Pearson* excerpt quoted by the dissent originates from an annotated legal encyclopedia referencing a New Hampshire case from 1895 that was overturned in 1905. While *Pearson* itself remains good law, the case was decided on the basis of the Court's nuisance analysis. Its brief reference to state board control was not only of dubious origin but also was incidental and unnecessary to the holding. *Pearson* does not disturb or even discuss *Carrington* or *Wander,* nor does it examine the implications of section 84.330.

**17.** The dissent explains that common law *respondeat superior* liability is based on control of the servant by the master and that chapter 84 places primary control of the police in the hands of the board. The majority does not disagree. But the common law analysis is unnecessary, indeed superseded, by virtue of the dual agency created in section 84.330.

**18.** Mo. Const. art. I, sec. 2.

**19.** Section 538.210 limits a private defendant's liability for non-economic damages but allows full recovery of actual economic losses.

not exceed ... three hundred thousand dollars for any one person in a single accident or occurrence.

The statute further provides for an annual adjustment based upon economic data supplied by the federal government. There is no dispute that the applicable limit in this case is $335,118.

This Court upheld the constitutionality of Section 537.610 in *Richardson v. State Highway and Transportation Commission*[20] and *Fisher v. State Highway Commission.*[21] In *Richardson*, the Court explained, "the General Assembly has a rational basis to fear that full monetary responsibility for tort claims entails the risk of insolvency or intolerable tax burdens."[22] In respect for the principle of *stare decisis*, the Court declines to revisit the issue. The statute is constitutional.

## V.

The judgment of the circuit court is affirmed.

WOLFF, C.J., LAURA DENVIR STITH, TEITELMAN and RUSSELL, JJ., concur; PRICE, J., concurs in part and dissents in part in separate opinion filed: LIMBAUGH, J., concurs in opinion of PRICE, J.

WILLIAM RAY PRICE, JR., Judge, concurring in part and dissenting in part.

I dissent from the majority opinion. Respondeat superior liability is based upon control of the servant by the master. Missouri statutes place exclusive control of the Saint Louis police department and all of its officers in the state-appointed board of police commissioners, not in the City of Saint Louis. Accordingly, respondeat superior liability cannot, as a matter of law, lie against the City for the acts of a Saint Louis police officer.

## I.

Missouri law has clearly and consistently held that respondeat superior liability is only imposed upon a party if that party exercises control over a servant or agent relative to the negligent actions at issue. "The right of control as to the mode of doing the work is generally held to be the *principal consideration* in determining the relationship." *Ross v. St. Louis Dairy Co.*, 339 Mo. 982, 98 S.W.2d 717, 723 (1936) (emphasis added).

"In determining whether one is such character of agent as to make the employer liable for the acts of the alleged agent, definitions serve as a 'general outline of the field of inquiry, as is recognized in the universal expression to the effect that each case must depend upon its own surroundings, facts, and circumstances, and be subjected to established specific tests in aid of *the ultimate and decisive test, right of control.*'"

*Barnes v. Real Silk Hosiery Mills*, 341 Mo. 563, 108 S.W.2d 58, 61 (1937) (emphasis added). "*Respondeat superior* is inapplicable unless a master-servant relationship exists. If there is no right to control, there is no liability." *Kaplan v. U.S. Bank, N.A.*, 166 S.W.3d 60, 66 (Mo.App. 2003).

Only if a master-servant relationship exists between the parties does the doctrine of respondeat superior act to impose liability on an employer. To determine if respondeat superior applies, it must be determined whether the person sought to be charged as a master had the *right or power to control and direct the physical conduct of the other*

---

**20.** 863 S.W.2d 876 (Mo. banc 1993).

**21.** 948 S.W.2d 607 (Mo. banc 1997).

**22.** *Richardson* at 879.

*in the performance of the act.* If there is no right to control, there is no liability; those rendering services but retaining control over their own movements are not servants. If there is no right to control, the person contracted to perform the work is an independent contractor.

*Lee v. Pulitzer Publ'g. Co.,* 81 S.W.3d 625, 631 (Mo.App.2002) (emphasis added).

## II.

The state of Missouri has deliberately chosen to place the police department of Saint Louis under state, not local, control. Chapter 84, RSMo 2000.[1] This was done by the creation of a board of police commissioners made up of the mayor of Saint Louis and four other members appointed by the governor with the consent of the Missouri Senate. Secs. 84.020;[2] 84.030.[3] The police board is charged with the responsibility of preserving peace and order and preventing crime in the city. Sec. 84.090.[4] The police board is authorized to "appoint, enroll and employ a permanent police force for the cities which they shall equip and arm as they may judge neces-

1. All statutory references are to RSMo 2000.

2. In all cities of this state that now have, or may hereafter attain, a population of five hundred thousand inhabitants or over, there shall be, and is hereby established, within and for said cities, a board of police, to consist of four commissioners, as provided in sections 84.040 to 84.080, together with the mayor of said cities for the time being, or whosoever may be officially acting in that capacity, and said board shall appoint one of its members as president, and one member who shall act as vice president during the absence of the president; and such president or vice president shall be the executive officer of the board and shall act for it when the board is not in session.

Section 84.020.

3. Beginning on January 9, 1989, the governor of the state of Missouri, by and with the advice and consent of the senate, shall appoint the four commissioners provided for in section 84.020, and one commissioner shall be appointed for a term of one year; one commissioner shall be appointed for a term of two years; one commissioner shall be appointed for a term of three years; one commissioner shall be appointed for a term of four years. Their successors shall each be appointed for a term of four years, and said commissioners shall hold office for their term of appointment and until their successors shall have been appointed and qualified. In case of a vacancy in said board for any cause whatsoever, it shall be filled by appointment for the unexpired term, in the same manner as in the case of original appointments. The governor shall issue commissions to the per-

sons so appointed, designating the time for which they are appointed in case the appointment is to fill an unexpired term occasioned by death, resignation or any other cause, and whenever the term of office of any commissioner expires, the appointment of his successor shall be for four years. The commissioners now holding offices under existing laws in any city of this state to which sections 84.010 to 84.340 apply are to hold their offices until the expiration of their terms, and their successors are duly appointed and qualified.

Sec. 84.030.

4. The duties of the boards of police hereby created shall be as follows: They

shall, at all times of the day and night, within the boundaries of said cities, as well on water as on land,

(1) Preserve the public peace, prevent crime and arrest offenders;

(2) Protect the rights of persons and property;

(3) Guard the public health;

(4) Preserve order at every public election, and at all public meetings and places, and on all public occasions;

(5) Prevent and remove nuisances on all streets, highways, waters and other places;

(6) Provide a proper police force at every fire for the protection of firemen and property;

(7) Protect emigrants and travelers at steamboat landings and railway stations;

(8) See that all laws relating to elections and to the observance of Sunday, and regulating pawnbrokers, gamblers, intemperance, lotteries and lottery policies, vagrants,

sary." Sec. 84.100.[5] The police board is further authorized to "make all such rules and regulations ... as they may judge necessary, for the appointment, employment, uniforming, discipline, trial and government of the police." Sec. 84.170.2.[6] Further, "all lawful rules and regulations of the board shall be obeyed by the police force on pain of dismissal or such lighter punishment ... as the boards may adjudge." *Id.*

The role of the city of Saint Louis relative to the police department is simply to fund it. Sec. 84.120.1.[7] In fact, state stat-

---

disorderly persons, and the public health are enforced;

(9) They shall also enforce all laws and all ordinances passed or which may hereafter be passed by the common council or municipal assembly of said cities, not inconsistent with the provisions of sections 84.010 to 84.340, or any other law of the state, which may be properly enforceable by a police force;

(10) In case they shall have any reason to believe that any person within said cities intends to commit any breaches of the peace, or violation of the law or order beyond the city limits, any person charged with the commission of crime in said cities and against whom criminal process shall have issued, may be arrested upon the same in any part of this state by the police force *created or authorized by sections 84.010* to 84.340; provided, however, that before the person so arrested shall be removed from the county in which such arrest is made he shall be taken before some judge, to whom the papers authorizing such arrest shall be submitted; and the person so arrested shall not be removed from said county, but shall forthwith be discharged, unless such judge shall endorse and approve said papers;

(11) The said police commissioners, or either of them, shall have the power to administer oaths or affirmations in the premises, to any person appearing or called before them;

(12) They shall also have the power to summon and compel the attendance of witnesses before them, whenever it may be necessary for the more effectual discharge of their duties.

Sec. 84.090.

5. To enable the boards to perform the duties imposed upon them, they are

hereby authorized and required to appoint, enroll and employ a permanent police force for the cities which they shall equip and arm as they may judge necessary. Except as provided below, the number of patrolmen to be appointed shall not be more than one thousand six hundred eighty-three of which number not more than two hundred fifty are to be probationary patrolmen.

Any increase in the number of patrolmen authorized, in addition to that provided for above, shall be permitted upon recommendation by the board of police commissioners, with the approval of the municipal board of estimate and apportionment. The number of turnkeys to be appointed shall be sixty-five, except that for each patrolman hereafter *promoted, demoted, removed,* resigned or otherwise separated from the force, an additional turnkey may be appointed, but under no circumstances shall more than one hundred fifty turnkeys be appointed. As each additional turnkey is appointed, the maximum number of patrolmen to be appointed shall be reduced accordingly so that when one hundred fifty turnkeys have been appointed, the number of patrolmen to be appointed shall not be more than one thousand five hundred ninety-eight.

Sec. 84.100.

6. The boards of police are hereby authorized to make all such rules and regulations, not inconsistent with sections 84.010 to 84.340, or other laws of the state, as they may judge necessary, for the appointment, employment, uniforming, discipline, trial and government of the police. The said boards shall also have power to require of any officer or policeman bond with sureties when they may consider it demanded by the public interests. All lawful rules and regulations of the board shall be obeyed by the police force on pain of dismissal or such lighter punishment, either by suspension, fine, reduction or forfeiture of pay, or otherwise as the boards may adjudge.

Sec. 84.170.2.

7. It shall be the duty of said boards, annually on or before the last day of February of each year to prepare, in writing, on such forms as may be prescribed for budget preparation

ute provides that any city official who attempts to interfere with the maintenance of said board of police, or the police force therein provided to be organized and maintained, or "who shall maintain or control any police force other than the one therein provided for, ... shall be liable to a penalty of one thousand dollars for each and every offense, ... and shall forever thereafter be disqualified from holding or exercising any office or employment whatsoever under the mayor or common council or municipal assembly." Sec. 84.220.[8] In addition, no ordinance passed by the City "shall, in any manner, conflict or interfere with the powers or the exercise of the powers of the boards ... nor shall the cities or any officer or agent of the corporation of the cities, or mayor thereof, in any manner impede, obstruct, hinder or interfere with the boards of police or any officer, or agent or servant thereof." Sec. 84.010.[9]

purposes by such cities for departments of city government, an estimate of the sum of money which will be necessary for the subsequent fiscal year, to enable them to discharge the duties hereby imposed upon them, and to meet the expenses of the police department. Such estimate shall include, but not be limited to, all reasonably anticipated revenues of such boards from all sources including, but not limited to, grants from the federal or state governments, governmental agencies or other grantors and forfeitures of property and proceeds of forfeited property, a table of organization, line items for personnel, supplies, maintenance, repairs, services and contractual requirements, and a statement comparing receipts and expenses for the last prior full fiscal year, the current fiscal year, and the fiscal year to which the estimate pertains. Said boards shall forthwith certify such estimate to the board of common council or municipal assembly, as the case may be, of said cities, who are hereby required to set apart and appropriate the amount so certified, payable out of the revenue of said cities, after having first deducted the amount necessary to pay the interest upon the indebtedness of said cities, the amount necessary for the expenses of the city hospital and health department, the amount necessary for lighting the city, and any sum required by law to be placed to the credit of the sinking fund of said cities. During a fiscal year for which an appropriation has been so made, said boards shall not transfer funds appropriated for one line item of such appropriation to any other line item without the prior approval of the municipal board of estimate and apportionment.
Sec. 84.120.1.

8. Any officer or servant of the mayor or common council or municipal assembly of the said cities, or other persons whatsoever, who shall forcibly resist or obstruct the execution or enforcement of any of the provisions of sections 84.010 to 84.340 or relating to the same, or who shall disburse any money in violation thereof, or who shall hinder or obstruct the organization or maintenance of said board of police, or the police force therein provided to be organized and maintained, or who shall maintain or control any police force other than the one therein provided for, or who shall delay or hinder the due enforcement of sections 84.010 to 84.340 by failing or neglecting to perform the duties by said sections imposed upon him, shall be liable to a penalty of one thousand dollars for each and every offense, recoverable by the boards by action at law in the name of the state, and shall forever thereafter be disqualified from holding or exercising any office or employment whatsoever under the mayor or common council or municipal assembly of said cities, or under sections 84.010 to 84.340; provided, however, that nothing in this section shall be construed to interfere with the punishment, under any existing or any future laws of this state, of any criminal offense which shall be committed by the said parties in or about the resistance, obstruction, hindrance, conspiracy, combination or disbursement aforesaid.

Sec. 84.220.

9. In all cities of this state that now have, or may hereafter attain, a population of seven hundred thousand inhabitants or over, the common council or municipal assembly, as the case may be, of such cities may pass ordinances for preserving order, securing property and persons from violence, danger or destruction, protecting public and private property, and for promoting the interests and

There can be no doubt that under this statutory scheme the city is expressly denied any role or authority in training, disciplining or determining the appropriate policies of the police department concerning its authority in the policing of Saint Louis and, thus, has absolutely no control over the police officers. The plaintiff in this lawsuit has not alleged any action or course of conduct on the part of the City different than the above. As a matter of law and as a matter of fact the city of Saint Louis has exercised no control over the board of police commissioners, the police department, or the officers involved here that would allow the imposition of respondeat superior liability.

### III.

The majority bases its opinion on section 84.330, which states:

> The members of the police force of the cities covered by sections 84.010 to 84.340, organized and appointed by the police commissioners of said cities, are hereby declared to be officers of the said cities, under the charter and ordinances thereof, and also to be officers of the state of Missouri, and shall be so deemed and taken in all courts having jurisdiction of offenses against the laws of this state or the ordinances of said cities.

Sec. 84.330. Although section 84.330 declares Saint Louis police officers to be "officers of said cities ... under the charter and ordinances thereof, and also officers of the state of Missouri, and shall be so deemed and taken in all courts having jurisdiction of offenses against the laws of this state or the ordinances of said cities," this language merely makes clear that the police officers are authorized to perform their duties both with respect to state statutes and city ordinances and to bring charges in both state and city courts. The statute neither places the officers under the control of the city nor specifies that the city shall be liable on a respondeat superior basis for the torts of the officers. In fact, the language of section 84.015,[10] providing that the venue for civil actions "involving the board of police commissioners," and section 84.095,[11] providing that all causes of action against "the members of the St. Louis board of police commissioners" shall be in the circuit court of Saint Louis, implies that it is the police board and not the city that is the proper party defendant for such purposes.

insuring the good government of the cities; but no ordinances heretofore passed, or that may hereafter be passed, by the common council or municipal assembly of the cities, shall, in any manner, conflict or interfere with the powers or the exercise of the powers of the boards of police commissioners of the cities as created by section 84.020, nor shall the cities or any officer or agent of the corporation of the cities, or the mayor thereof, in any manner impede, obstruct, hinder or interfere with the boards of police or any officer, or agent or servant thereof or thereunder, except that in any case of emergency imminently imperiling the lives, health or safety of the inhabitants of the city, the mayor may call upon and direct the chief of police of the city to provide such number of officers and patrolmen to meet the emergency as the mayor determines to be necessary and the chief of police shall continue to act under the direction of the mayor until the emergency has ceased, or until the board of police commissioners takes charge of such matter.

Sec. 84.010.

10. "Venue for any civil action involving the board of police commissioners, established pursuant to section 84.020, shall be appropriate in the twenty-second judicial circuit." Sec. 84.015.

11. "All causes of action against the members of the St. Louis board of police commissioners in their official capacity shall be commenced in the circuit court of the city of St. Louis." Sec. 84.095.

The majority also cites *Carrington v. City of St. Louis,* 89 Mo. 208, 1 S.W. 240 (1886), and *Wander v. Kimmel,* 256 Mo. 611, 165 S.W. 1067 (1914). In *Carrington,* a police officer left some doors in a dangerous position causing the plaintiff to be injured and the plaintiff sued the city. 1 S.W. at 240. The court, citing to the version of 84.330 existing at the time, stated "[w]hile these officers are state officers for some purposes, they are also city officers. We see by express law they are made city officers." *Id.* at 241.

*Carrington* did not find the city liable under respondeat superior. Instead, *Carrington* found that the City was *directly* liable on a premises liability theory:

> [I]t is the unquestioned duty of the city to keep its streets and sidewalks in a reasonably safe condition for persons traveling thereon, and it is liable in damages to one injured by reason of negligence in this behalf. We conclude that as to the act in question Balte was the officer and agent of the city, and that his knowledge of the condition of the trap-doors was notice to and knowledge thereof on the part of the city.

*Id.* at 242. The above-quoted language merely held that the officer was an agent only for the purposes of imputing notice to the city. Significantly, *Carrington* notes that Saint Louis police officers "are under the control of the [board of police] commissioners, and not the [city] assembly." *Id.* at 241.

*Wander,* also, does not apply. It dealt only with the question of whether an officer is an agent of the city for the purposes of exemption from receipt of a fee for testifying in city court. *Wander,* 165 S.W. at 1072–73. *Wander* did not involve any torts nor did it address the master-servant relationship or respondeat superior liability.

**IV.**

One case directly addresses the issue at hand. It is directly on point. In *Pearson v. Kansas City,* 331 Mo. 885, 55 S.W.2d 485 (1932), a woman was injured when she fell in an elevator shaft at a Kansas City police station. *Id.* at 486. This Court found the city of Kansas City could not be held liable, stating:

> "The police station and the elevator therein was entirely under the control of the police board, which was a state agency. A municipal corporation has no inherent police power, but derives it solely from delegation by the state. In this state, the Legislature had not seen fit to delegate completely to Kansas City the function of maintaining a police department, but had retained control thereof in the state by placing upon the Governor of the State the duty of appointing the police board which would have charge of such functions there. While the police board was in charge of the station, there was nothing the city could do about it. As said in 19 R.C.L. 1114, s 394: The rights and powers of a municipality are subject to the will and control of the legislature, and *it lies within the power of the legislature to take the control of some municipal department out of the hands of the municipality and turn it over to some board of state officers. When this has been done, upon rudimental principles of justice the municipality cannot be held liable for the negligence of such officers, regardless of the nature of the function they are administering.*"

*Id.* at 491 (emphasis added).

Also, in *Crigler v. City of St. Louis, et al.,* 767 F.Supp. 197 (E.D.Mo.1991), Judge George Gunn, formerly of this Court, ruled that the City of Saint Louis could not be liable under U.S.C. section 1983, 2000, be-

cause it did not control Saint Louis police officers. Judge Gunn declared:

Even if such evidence was sufficient to support plaintiff's contention that an official policy of racial discrimination exists, plaintiff would be unable to demonstrate the existence of a material factual dispute with respect to the City's liability, because the City has no direct control over the activities of the Board of Police Commissioners or its employees.

. . .

The division of authority between the City and the Board of Police Commissioners set forth in Mo.Rev.Stat. sec. 84.010 indicates that neither the City nor its agents possesses the authority to make official policy concerning the actions of the Board of Police Commissioners or individual police officers.

*Crigler,* 767 F.Supp. at 199–200.

### V.

I agree with the portion of the majority opinion that upholds the constitutionality of the statutory damage caps. The legislature has determined that damage caps protect Missouri businesses and individuals from the threat of unjustified and excessive verdicts. That determination, however, does not mean that such caps are without flaw.

Here, a jury awarded plaintiff a verdict of $1.2 million for the death of her mother. After payment of $335,118 on behalf of the police officer for his direct negligence and $335,118 on behalf of the Saint Louis police board under respondeat superior liability because the police officer acted under the board's control, plaintiff is left with a $529,764 shortfall.

While statutory damage caps allow for full compensation of individuals with lesser damages, they do not allow for full compensation of individuals who suffer more significant injuries or death. The remedy for this problem, however, lies with the legislature to reexamine the amount and the manner in which the caps should be applied to catastrophic cases.

The judgment of the circuit court should be reversed.