Thomas BAUER, Plaintiff–Respondent,

v.

7–ELEVEN, INC. and Randy C. Munton, Inc., Defendants–Appellants.

No. ED 97989.

Missouri Court of Appeals, Eastern District, Division Five.

Nov. 27, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 7, 2013.

Application for Transfer to Supreme Court Denied Feb. 26, 2013.

John S. McCollough, Melissa R. Null, St. Louis, MO, for appellant.

Daniel A. Raniere, Mark A. Panzeri, Mark C. Aubuchon, St. Louis, MO, for respondent.

Before LAWRENCE E. MOONEY, P.J., PATRICIA L. COHEN, J., and ROBERT M. CLAYTON III, J.

ROBERT M. CLAYTON III, Judge.

7–Eleven, Inc. and Randy Munton, Inc., ("Defendants"), appeal the trial court's judgment following a jury verdict in favor of Thomas Bauer ("Plaintiff") in his defamation suit. Because Plaintiff failed to prove Defendants acted with actual malice, we reverse the judgment.

## I. BACKGROUND

The present action arises from a successful campaign to recall Plaintiff from his position as alderman for the 24th Ward of the City of St. Louis. Plaintiff served as a member of the Board of Alderman from 1999 until he was recalled in September 2005. As alderman, Plaintiff supported several redevelopment projects, including the development of a QuikTrip gas station. Randy Munton owned a 7–Eleven gas station one block from the proposed development site, and he opposed the QuikTrip project.

Plaintiff was also involved in a private capacity in the development of a property in the Clayton–Tamm neighborhood. The plan called for residential redevelopment of a property that was owned by a decedent's probate estate ("the estate property"). Plaintiff was the attorney who represented the personal representative of the estate, Richard Torack. Western Continental, a developer with whom Plaintiff had worked in the past, ultimately purchased the estate property for $95,000.

Based on their opposition to this project, the QuikTrip project, and other redevelopment projects supported by Plaintiff, Munton and several residents in the 24th Ward started a campaign to recall Plaintiff. One resident drafted a flyer entitled "10 Reasons for Bauer Recall." Munton distributed the flyers at his 7–Eleven station. Paragraph 2 of the flyer stated: [1]

> Bauer gives work only to certain developers and at least twice has sold property to one in particular for less than what other people (not developers) have offered for the same land. One of these sales was property from an estate for which Bauer was the Executor and whose owner had requested that 20% of the sale price be donated to St. James Church. Bauer took his developer's offer over one from a resident of the 24th Ward ... the accepted offer was at least $25,000 less. When questioned about

---

1. Plaintiff made no claim against the remaining "Reasons" raised in the flyer.

this at a Neighborhood Association Meeting ... by the man who made the larger offer ... Bauer said he didn't remember it.

Plaintiff filed the present action for defamation against Defendants and numerous other individual defendants. The petition asserted Paragraph 2 distributed by Munton was false and defamatory. The case proceeded to jury trial.[2] At the close of evidence, defendants filed motions for directed verdict, which the trial court denied. The jury returned a verdict in favor of Plaintiff, awarding him $150,000 in damages and finding 7–Eleven, Inc. was responsible for Munton's conduct. The jury did not award punitive damages. The trial court entered judgment in accordance with the verdict. Defendants filed motions for judgment notwithstanding the verdict and new trial, which the trial court denied. This appeal follows.

## II. DISCUSSION

In a joint brief on appeal, Defendants assert five points of error. Because the first point is dispositive, we need not consider the remaining points.[3] In their first point, Defendants argue the trial court erred in denying the motions for directed verdict and for judgment notwithstanding the verdict because Plaintiff failed to es-

tablish actual malice on the part of Defendants to support his defamation claim. According to Defendants, there was insufficient evidence that Munton knew Paragraph 2 of the flyer was false or had serious doubts about its truth or falsity.

### A. Standard of Review

Our review of the trial court's denial of a motion for directed verdict and judgment notwithstanding the verdict is the same: we must determine whether a plaintiff made a submissible case. *Hodges v. City of St. Louis*, 217 S.W.3d 278, 279–80 (Mo. banc 2007). On questions of law, however, this court reviews the trial court's conclusions *de novo*. *Id.* at 280. Whether a statement is defamatory is a question of law. *Ribaudo v. Bauer*, 982 S.W.2d 701, 704 (Mo.App. E.D.1998).

### B. Submissibility of Plaintiffs Defamation Claim

■ To make a submissible case for defamation a plaintiff must plead and prove that the defendant published a defamatory statement[4] that identified the plaintiff, was false, was published with the requisite degree of fault, and damaged the plaintiff's reputation. *Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 70 (Mo. banc 2000).

---

**2.** Plaintiff dismissed the other individual defendants prior to trial and proceeded solely against Defendants.

**3.** In Points two through four, Defendants argue the trial court erred in denying the motions for directed verdict and for judgment notwithstanding the verdict because: (point two) Plaintiff failed to prove the damage to his reputation was directly related to Paragraph 2; (point three) Paragraph 2 was not defamatory as a matter of law, because it could reasonably be construed in an innocent sense; and (point four) Paragraph 2 was constitutionally protected speech, because it was a statement of opinion made within the context of a political campaign. In Point five,

Defendants argue the trial court erred in denying the motion for new trial, because the jury verdict was against the weight of the evidence.

**4.** The phrase "defamatory statement" has meaning independent from the term "defamation" and is a term of art. Generally, a defamatory statement refers to a statement that tends to so harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. *Kennedy v. Jasper*, 928 S.W.2d 395, 399–400 (Mo.App. E.D.1996).

The issue here is whether Defendants acted with the requisite degree of fault.

■■■■ Where a plaintiff is a public official, the requisite degree of fault is actual malice.[5] *Glover v. Herald Co.*, 549 S.W.2d 858, 860–61 & n. 1 (Mo. banc 1977). The plaintiff bears the burden of proving actual malice by clear and convincing evidence. *Westhouse v. Biondo*, 990 S.W.2d 68, 70 (Mo.App. E.D.1999). Actual malice exists where a defendant had actual knowledge that the alleged defamatory statement was false or acted with reckless disregard as to its truth or falsity at a time when the defendant had serious doubts as to its truth. *St. Amant v. Thompson*, 390 U.S. 727, 730–31, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968); *Overcast*, 11 S.W.3d at 70. The test for actual malice is not whether a reasonably prudent person would have had serious doubts as to the truth of the publication, but whether the defendant in fact held such doubts. *In re Westfall*, 808 S.W.2d 829, 836–37 (Mo. banc 1991); *see also Englezos v. Newspress & Gazette Co.*, 980 S.W.2d 25, 33 (Mo.App. W.D.1998). In a defamation case involving a public official, we are obliged to determine the presence of actual malice by an independent review of the entire record. *Warner v. Kansas City Star, Co.*, 726 S.W.2d 384, 386–87 (Mo.App. W.D.1987).

■■■■ Here, Plaintiff specifically objected to the portions of Paragraph 2 that alleged he, as the executor of the estate property, accepted an offer from a favored developer that was $25,000 less than another offer. Because Plaintiff was a public official, he was required to show by clear and convincing evidence that Munton had actual knowledge of the falsity of these statements or had actual serious doubts as to their truth. *See Englezos*, 980 S.W.2d at

33. Defendants argue that Plaintiff failed to establish Munton published the alleged defamatory statement with actual malice. The record in its entirety supports Defendants' argument.

Once the details of the redevelopment plan for the estate property were revealed, the Clayton–Tamm neighborhood association held an emergency meeting in January 2005 to address community concerns. Both Plaintiff and Munton attended the meeting. At the end of the meeting, Plaintiff addressed the group, responding to residents' concerns.

Plaintiff testified at trial that during the meeting, he clarified he was not the executor for the estate. Instead, Plaintiff explained he was the attorney for Torack, who was the personal representative for the estate. Plaintiff explained after an offer on the estate property for $90,000 fell through, Plaintiff contacted Western Continental with Torack's permission and offered the property for $95,000. Plaintiff stated that Rob McKendry had expressed interest in the estate property, but he had not made an offer of $125,000 for the property. Plaintiff further testified the same discussion occurred at a second neighborhood association meeting in February, which Plaintiff and Munton also attended.

In his deposition and at trial, Munton testified he recalled Plaintiff speaking at the January and February meetings. Munton testified he did not hear Plaintiff clarify that he was not the personal representative for the estate. Munton also testified he did recall Plaintiff saying he could have sold the estate property to McKendry but McKendry did not have the means to "do the right thing."

---

5. By contrast, the requisite degree of fault for a private figure is negligence. *Overcast v.*

*Billings Mut. Ins. Co.*, 11 S.W.3d 62, 70 (Mo. banc 2000).

Likewise, McKendry testified he had made a verbal but not written offer for the estate property. He had discussed buying the estate property with Plaintiff for $125,000, but he never offered a written bid. McKendry testified he asked Plaintiff to contact him when the property was offered for sale; however, Plaintiff did not do so but instead sold it to Western Continental. Regarding the January 2005 meeting, McKendry testified he told the crowd he would have paid $125,000 for the estate property but he and Plaintiff had never had a written sales contract.

In addition, in February 2005, the Riverfront Times published an article, titled "Doubting Thomas: Alderman Bauer's Stealth Schemes are Raising Eyebrows," discussing Plaintiff's support for redevelopment projects. Regarding the estate property, the article contained an interview with McKendry who stated he was willing to buy the property for $125,000. Deborah Lord, who wrote the flyer containing the alleged defamatory language, testified she based the flyer in part on this Riverfront Times article.

Based on the foregoing, the record does not support a finding that Munton in fact knew Paragraph 2 of the flyer was false or had serious doubts of its truth. Instead, although Plaintiff asserts Munton was at two meetings where Plaintiff denied the actions of which he was accused in Paragraph 2, Munton's presence at the two meetings is not sufficient, in light of the entire record, to meet clearly and convincingly this subjective standard. Rather, the evidence in full shows the information before Munton was that McKendry made a verbal, but not written, offer for $125,000.

This information corresponds on its face with the statement in Paragraph 2 that Plaintiff did not accept an "offer" for $25,000 higher than the offer from his favored developer. For determining actual malice, whether or not Paragraph 2 was in fact false is not the issue; rather, the issue is whether Munton knew it was false or had serious doubts as to its truth. Plaintiff failed to prove with clear and convincing evidence that Munton published the language with actual malice.

█ Moreover, while Plaintiff did explain at the meeting he had not received an offer, this evidence alone, when viewed in the context of the entire record, does not satisfy his burden of proof.[6] We cannot hold that a citizen is compelled to believe a denial by a public figure, nor can we hold that such a denial necessarily requires a citizen to investigate the circumstances further. While caution and moderation might well be praiseworthy in political debate, we cannot mandate it in the give-and-take of the political arena. "The Constitutional protection afforded statements made during public debate on political issues has always been broadly construed." *Ribaudo,* 982 S.W.2d at 705. The public's right to be informed about public business and the conduct of those in the public arena can override a public official's interest to be free of erroneous attacks. Rather, "to ensure the ascertainment and publication of the truth about public affairs, it is essential that the First Amendment protect some erroneous publications as well as the true ones." *St. Amant,* 390 U.S. at 732, 88 S.Ct. 1323.

Accordingly, having determined that Defendants did not act with the requisite

---

**6.** Plaintiff also points to an email Munton received from the flyer's author in which she acknowledges using "poetic license" to draft the document. Plaintiff argues this email demonstrates that Munton had actual knowl-

edge of the flyer's falsity or serious doubts as to its truth. In light of the record, we likewise find this email fails to satisfy Plaintiff's burden.

actual malice, Plaintiff's defamation action was not supported by substantial evidence and Plaintiff failed to make a submissible case for defamation. Therefore, we hold the trial court erred in denying Defendants' motions for directed verdict at the close of the evidence and judgment notwithstanding the verdict.

We grant the first point on appeal and reverse the trial court's judgment.

LAWRENCE E. MOONEY, P.J. and PATRICIA L. COHEN, J., concur.